STROUD *v.* GURDON LUMBER COMPANY.

4-7185                                      177 S. W. 2d 181

Opinion delivered December 20, 1943.

*McMillan & McMillan,* for appellant.

*J. H. Lookadoo* and *M. J. Harrison,* for appellee.

HOLT, J.   September 12, 1941, at about 5:30 in the afternoon, Lawrence Stroud, husband of appellant, Annie Stroud, was killed, and appellant, Gilbert Bryant, was seriously injured, when a truck in which they were riding overturned on what is known as the "Kansas Road," near Gurdon, Arkansas.

Mrs. Stroud, as widow of Lawrence Stroud, and Gilbert Bryant, in his own right, filed claims before the "Arkansas Workmen's Compensation Commission" for compensation under the provisions of the "Workmen's Compensation Law," (Act 319 of 1939). The claims were first heard before one of the commissioners and there was a finding and decision in favor of the appellees, Gurdon Lumber Company, and Lumbermen's Reciprocal Insurance Exchange, its insurance carrier. Thereafter, upon appellants' petition for review before the full Commission, there was a hearing, which resulted in an affirmance of the finding and decision of the single commissioner. In apt time, appellants appealed to the Clark circuit court, where the claims were, by agreement, con-

solidated for the purpose of trial, and upon the record made before the full Commission, the Clark circuit court "sustained and affirmed" the judgment of the full Commission. This appeal followed.

Appellants state the issue here in this language: "Appellants' contention is that the undisputed evidence shows these claimants were injured while they were actively engaged in performing their duties as employees; that the injuries arose out of and in the course of their employment and the Commission and the Circuit Court erred in failing to so hold."

The Arkansas Compensation Commission found that Stroud and Bryant, at the time of the mishap, which resulted in the death of Stroud and the serious injury to Bryant, were employees of appellee, Gurdon Lumber Company, but that the death and injuries did not arise out of and in the course of their employment and denied compensation. This judgment of the Commission was affirmed by the Clark circuit court on appeal.

The question which we determine here is: Did the injuries to Stroud, which resulted in his death, and the injuries to Bryant, arise "out of and in the course of their employment?" The question is one of fact, and as indicated has been determined by the Commission and the trial court adversely to appellants' contention. On appeal here, unless we can say that the judgment of the Clark circuit court is not supported by substantial evidence, then by previous holdings of this Court, it would be our duty to affirm.

In the recent case of *J. L. Williams & Sons, Inc.* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82, this court held: (Headnote 2) "Findings of fact made by the Workmen's Compensation Commission are, on appeal, given the same verity as attach to the verdict of a jury, and this applies on appeal to the circuit court as well as to the Supreme Court from the circuit court. Act No. 319 of 1939, § 25." See, also, *Baker* v. *Silaz,* 205 Ark. 1069, 172 S. W. 2d 419.

There appears to be little, if any dispute, as to the material facts. Lawrence Stroud owned and operated

his own truck. He lived with his family about 12 miles east of Gurdon, just north of the "Kansas Road." For some time prior to his death, he had hauled lumber for the Gurdon Lumber Company from three lumber mills, including the Harrington lumber mill. For this service, he was paid $3 per M. He worked when he pleased. Stroud employed Gilbert Bryant as his helper and paid him 75c per load. At the time of the injuries complained of here, there was only one mill, the Harrington mill, from which Stroud could haul, the other two mills having closed down. In order to supplement his work, Stroud, prior to the mishap, had rented his truck to the Arkansas Louisiana Gas Company, for $1.50 per hour, to be used by it during the day, or until 4 o'clock in the afternoon, when his truck, by agreement, was delivered by the Gas Company to the Texaco Filling Station at Gurdon, where it was serviced and made ready for Stroud, who then used it during the night in hauling lumber as above noted. It usually required the greater part of an hour to service the truck, and the Gas Company's driver of the truck (Easley), remained with it until Stroud came to the station and picked it up, (which he did a part of the time). If Stroud did not arrive at the station before the truck was serviced, Easley would drive the truck to Stroud's home and deliver it to him there.

On the afternoon that Stroud was killed and Bryant injured, Stroud left his home at about 3 p. m. to get his truck at the Texaco Station to haul lumber from Harrington's mill. When he reached the "Kansas Road," he was joined by his helper, Gilbert Bryant. They secured a ride with a man by the name of Thomas and rode with him for a short distance. They then got out and walked until they were picked up by another man, Herbert Jennings, and after riding for a short distance with him, they got out and secured a ride in a truck driven by a third man, Guy Langley, and while riding with Langley, the truck turned over before reaching Gurdon, killing Stroud and seriously injuring Bryant.

Stroud and Bryant were not working by the hour. The Gurdon Lumber Company had no control over them as to when they began or quit work, or the route traveled

in performing their work. Stroud, for his own conveni-
ence and profit, had arranged with the Gas Company, for
a consideration of $1.50 per hour, to use his truck (the
Gas Company furnishing its own driver, Easley) during
the day, until 4 o'clock in the afternoon, when the Gas
Company would deliver Stroud's truck to the service
station in Gurdon to be serviced and then to be picked
up by Stroud for night hauling of lumber from the Har-
rington mill. The Gurdon Lumber Company had not
agreed to transport, and had made no provision for the
transportation of Stroud and Bryant over the approxi-
mate 12 mile journey from Stroud's home to the service
station in Gurdon, or to or from their work. Appellee
was not interested in how appellants reached their place
of work.

On the day of the mishap in question, Stroud and
Bryant chose their own method of conveyance from
Stroud's home to the service station. In so doing, they
elected to ride with strangers who had no connection with
the Gurdon Lumber Company. They knew that the Stroud
truck would not be available to them until its delivery
by the Gas Company to the service station at 4 o'clock
and until after the additional time required to service the
truck and put it in condition for Stroud's night use.

We think it clear on the facts presented that the work
of Stroud and Bryant did not begin until the Stroud
truck was delivered to them, and since the truck had not
been delivered when the mishap occurred, the injuries
resulting therefrom did not arise out of and in the course
of their employment with the Gurdon Lumber Company.

On the facts as presented to the Commission, this
case is clearly distinguishable from that of *Hunter* v.
*Summerville*, 205 Ark. 463, 169 S. W. 2d 579, on which
appellants strongly rely. Obviously, each case must be
decided on the facts presented. That the Hunter case
turned on the fact as found there, that the employer had
agreed to furnish transportation to the employee to and
from work, is clear from the last paragraph in that
opinion, wherein this court said: "In view of the fact that
the evidence in this case established that transportation

to and from his work was a prerequisite to the appellee's engaging in the timber cutting, and that there was an implied undertaking by the employer to furnish this transportation, as well as a tacit acquiescence on the part of the employer in the custom of his workmen riding on his sub-contractor's truck when it was convenient to do so, we conclude that the circuit court did not err in sustaining the award made by the commission in favor of the appellee.''

As we have indicated, no such fact situation is present in the instant case, since there is no evidence here that the Gurdon Lumber Company agreed to furnish Stroud and Bryant transportation to work.

The Court of Appeals of Maryland in *Harrison* v. *Central Const. Corp., et al.,* 135 Md. 170, 108 Atl. 874, announced the general rule: ''When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee while on his way to work is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of the employment.''

And, in *Royalty Indemnity Co.* v. *Madrigal,* 14 S. W. 2d 106, the Court of Civil Appeals of Texas held: (Headnote 2) ''Where employe, after day's work has ended, proceeds to leave place of labor, choosing his own route and method of travel, master not having contracted to furnish him transportation, and for his personal convenience voluntarily mounts truck not property of nor under employer's control and is injured by mishap to truck not on premises of employer, injury was not received in 'course of employment' and is not compensable under Workmen's Compensation Law.''

The text writer in 28 R. C. L., p. 804, § 93, says: "The compensation act, it has been very generally held, does not authorize an award in case of injury or death from a peril which is common to all mankind, or to which the public at large is exposed. * * * The employee gets up in the morning, dresses himself, and goes to work, because of his employment; yet if he meets with an accident before coming to the employer's premises or his place of work, that is not a risk of his occupation, but of life generally." And, the Supreme Court of Oklahoma, in *Indian Territory Illuminating Oil Co.* v. *Gore, et al.*, 152 Okla. 269, 4 Pac. 2d 690, said: "In the absence of an agreement, express or implied, to transport an employee to the place of work, the employer is not responsible for an injury sustained by the employee in traveling to the place of work."

Finding no error, the judgment is affirmed.

ROBINS, J. (dissenting). I respectfully dissent from the majority opinion in this case.

In my opinion, when a workman lives at such a distance from his work that he must use transportation in order to get to his place of employment, the risk that he incurs while using this transportation, regardless of its form and regardless of who furnishes it, constitutes a hazard of his employment. Therefore, any injury that he sustains while being transported to or from his work arises out of and in the course of his employment, so as to be compensable under the Workmen's Compensation Law. This, as I view it, was the principle underlying our decision in the case of *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579, and it is supported by the great weight of authority in this country.

Some recent cases in which this rule is clearly enunciated are: *Industrial Commission* v. *Ætna Life Ins. Co.,* 64 Colo. 430, 174 Pac. 589, 3 A. L. R. 1336; *Rachels* v. *Pepoon,* 135 Atl. 684; *Williams* v. *American Employer's Insurance Co.,* 71 App. D. C. 153, 107 F. 2d 953; *Sheehan* v. *Board of Trustees,* 256 App. Div. 148, 9 N. Y. S. 2d 235; *Bennett* v. *Marine Works,* 273 N. Y. 429, 7 N. E. 2d

847; *Sapulpa Refining Co.* v. *State Industrial Commission,* 91 Okla. 53, 215 Pac. 933; *Wearner* v. *Western Michigan Conference,* 260 Mich. 540, 245 N. W. 802.

The recent decision of the Supreme Court of the United States in the consolidated cases of *Aguilar* v. *Standard Oil Co.,* and *Waterman Steamship Corp.* v. *Jones,* 318 U. S. 724, 63 S. Ct. 930, decided April 19, 1943, while not controlling here, well reflects the trend of judicial decision. In that case there were involved the claims of two seamen against the owners of their respective ships for compensation for injuries sustained by each of these seamen while they were on shore leave. The law applicable was thus stated: ''That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and his wages, at least so long as the voyage is continued'' (130 Fed. 2d 797). One of these sailors was injured by falling into a ditch as he was leaving the dock where his ship was birthed. The other was injured while he was traveling a roadway, on his way back to his ship, by being struck by a motor vehicle. In both cases the ship owners urged, as has been successfully contended by the employer and insurance carrier in the case at bar, that these seamen were not engaged in any work or on any mission for their ships or the owners thereof, and were injured as a result of peril to which the entire public was exposed. But our highest court held that the construction urged for disallowance of the claims involved was too narrow a one, and ordered allowance of the claims of both seamen. Mr. Justice Rutledge, speaking for the court said: ''Certainly the nature and foundation of the liability require that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes. If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf.''

This court has frequently held that the Workmen's Compensation Law should be liberally construed in favor of those whom it was intended to protect—the workman and his dependents. Application of a liberal construction

498

of this law in the instant case would require, in my opinion, the allowance of both of the claims involved.