CERRATO *v.* McGEORGE CONTRACTING COMPANY.

4-7286 178 S. W. 2d 247

Opinion delivered March 6, 1944.

*Bailey & Thompson,* for appellant.

*Buzbee, Harrison & Wright,* for appellee.

SMITH, J. The widow of Joe Cerrato filed a petition with the Workmen's Compensation Commission asking compensation under the law for her husband's death. The claim was disallowed by the commission, and that finding was affirmed on the appeal to the circuit court, from which judgment is this appeal. There are no substantial conflicts in the testimony, from which the commission prepared a statement of the case, with the finding of facts thereon to the following effect.

Cerrato was killed on August 22, 1942, when he accidentally came in contact with a live electric wire lying

across a highway known as the Bryant-Bauxite road, which road, at that time, was being widened and surfaced by Gregory-Hogan Company as contractors. Other contractors were engaged in the performance of various contracts in connection with the construction and operation of the Hurricane Creek Alumina Plant near Bauxite. Cerrato was employed by McGeorge Contracting Company, one of these contractors engaged in a work that required the use of pit gravel inside the plant area, which is entirely inclosed by a fence. Cerrato's duties were to haul gravel in his personally owned truck, from a gravel pit several miles away, for the use of the McGeorge Contracting Company. He worked under the direction of A. T. Hemphill, superintendent of the McGeorge Contracting Company, who maintained the company office near the highway where the work was in progress. Cerrato and other employees were required to report to this office each morning before beginning work, and to check out from this office at the completion of the day's work. On the day of his death, Cerrato, and other employees, reported for work at the usual time, but all the haulers were dismissed at 11:00 a. m., on account of weather conditions.

Having some free time on hand, Cerrato and two other fellow-employees drove one of the trucks to Benton, five miles away, to see if new tires could be purchased for Cerrato's truck. On returning from this mission, which took about two hours, to the site of the construction work, they parked Cerrato's truck and changed to a truck operated by Vernon Stroud, whose employment was similar to that of Cerrato. These two employees, and another, all resided in North Little Rock, and they alternated in taking the party to and from their homes to their place of work, using one of the trucks for that purpose and parking the other two trucks near the place of employment.

These employees left their place of work in Stroud's truck and drove northward along the Bryant-Bauxite road. They approached a point, some 800 feet south of the junction of this road with highway 70, when they

came upon one or more cars stuck in the mud, and in attempting to dislodge these other cars, the truck in which they were riding also became stuck. The passengers in Stroud's truck alighted to push the truck out of the mud, and while so engaged Cerrato came in contact with an electric wire, which had been strung to a pole on the side of the highway, and which furnished electric current for a poultry farm across the road from the place of the accident. Cerrato's contact with this wire caused his death.

It is contended in support of claimant's claim, that Cerrato's death arose out of, and occurred in the course of his employment, because it occurred within the general area of the alumina plant under construction to which the Bryant-Bauxite road led, which was being resurfaced and widened. It was shown that decedent's wages started from the time he checked in for work at the field office, and ceased when he checked out at the end of his day's work, and it was shown also that the employer did not furnish, or agree to furnish, Cerrato with transportation to and from his home and his place of employment.

From these and other facts the commission found: "That claimant, Joe Cerrato, met his death in an accident which did not arise out of or occur in the course of his employment," and the conclusion of law was announced that: "At the time of his accident, decedent was en route to his home. He had left the premises of the McGeorge Contracting Company's field office and was on a public highway."

These findings, if not supported by the undisputed testimony, are at least sustained by substantial testimony and are, therefore, as binding upon us as would be the verdict of a jury.

Appellant insists that, even so, the opinion of this court in the case of *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579, authorized and required a finding in her favor. We think, however, that the same distinction exists between the instant case and the Hunter case that was said to exist between the Hunter case and the case

of *Stroud* v. *Gurdon Lumber Co., ante,* p. 490, 177 S. W. 2d 181. In the Hunter case, as is pointed out in the opinion in the Stroud case, the employer had agreed to furnish transportation to the employee to and from his work, and the injury was sustained while the transportation was being provided. But here, as in the Stroud case, there was no such agreement. Cerrato furnished his own transportation to and from his work. He was riding in the truck of a fellow-employee, who was furnishing transportation for both, upon a public highway, four hours after he had ceased working for his employer, at a distance of about three and one-half miles from the place of his employment, and was killed by coming in contact with a live wire lying across a public road, which was as much a peril to other users of the road as it was to Cerrato and his companions.

In the Stroud case, we quoted, with approval, from an opinion of the Supreme Court of Oklahoma in *Indian Territory Illuminating Oil Co.* v. *Gore,* 152 Okla. 269, 4 Pac. 2d 690, the statement that ''In the absence of an agreement, express or implied, to transport an employee to the place of work, the employer is not responsible for an injury sustained by the employee in traveling to the place of work,'' and the rule would not be different if the employee were traveling from his place of work, as was Cerrato.

We think the testimony supports the findings of fact and the conclusions of law made by the commission, and that the circuit court properly so held. The judgment must, therefore, be affirmed, and it is so ordered.