BALES, ADMINISTRATRIX, *v.* SERVICE CLUB No. 1,
CAMP CHAFFEE.

4-7640                                    187 S. W. 2d 321

Opinion delivered May 7, 1945.

*Heartsill Ragan* and *Daily & Woods,* for appellant.

*Warner & Warner,* for appellee.

SMITH, J. Appellant, who is the administratrix of the estate of Etta M. Silence, and the guardian of the minor children of Mrs. Silence, filed a claim for compensation with the Workmen's Compensation Commission, which was disallowed, and that order was affirmed on the appeal to the circuit court, and this appeal is from that judgment of the circuit court.

The cause was heard in the circuit court upon an agreed statement of facts, from which we copy the following recitals.

"Camp Chaffee is located on Arkansas State Highway 22, nine miles east of Fort Smith, Arkansas. The camp area is under the control of the Camp Service Command, which is empowered to promulgate rules and regulations governing persons entering the area. However, the Command has never promulgated or enforced any but the most lenient rules regulating the entrance to the camp at all hours, except between 10 p.m. and 6 a.m. Civilian guards under the Camp Command are stationed at all entrance gates, at all hours of the day and night. Between all hours except from 10 p.m. and 6 a.m., pedestrians, drivers and passengers in motor vehicles, including civilians, are permitted to enter the camp area without identification, pass or authority from the camp authorities. Between those hours of 10 p.m. and 6 a.m. civilians are not permitted to enter the camp area except by permission of those in authority. Persons who are permitted to enter the camp are free to travel upon all streets and sidewalks, including those hereinafter mentioned.

"The main entrance into Camp Chaffee from said highway 22 is upon 4th Ave., which is paved, and extends north and south. Proceeding south, it is intersected at several places by other paved streets which run east and west in the camp area. The thirteenth street so intersecting is Fort Smith Boulevard, which is paved, and it extends east and west of 4th Ave.

"Stone sidewalks extend along both the north and south sides of Fort Smith Boulevard, from 4th Ave. east.

694

The sidewalk abutting Fort Smith Boulevard on the south side is approximately 5 feet wide, and extends east continuously from 4th Ave. to the next street running north and south, which is 3rd Ave. This sidewalk passes in front of the buildings occupied by the Signal Center, the Signal Officers Headquarters, the Post Photo Shop and Service Club No. 1. This sidewalk may be used without restrictions by all persons, including civilians and civilian employees, who enter the camp area, and its use is not restricted to those approaching or leaving Service Club No. 1. The sidewalk comes to an end at 3rd Ave., which runs north and south, at the east line of the Service Club No. 1 premises, there being no other buildings or camp facilities of any kind east of said 3rd Ave., except a fire station just across 3rd Ave. and east of Service Club No. 1.

"The sidewalk abutting Fort Smith Boulevard on the north side is approximately 7 feet wide and extends east continuously from 4th Ave. to 3rd Ave., the next street running north and south. It passes in front of the field house, which is across the street from Service Club No. 1. It is also a public sidewalk. This walk is level from 4th Ave. east to the field house. At a point on this north sidewalk, almost directly across the street from the main entrance to the Service Club, there is an extension of this sidewalk south that forms a culvert over the drainage ditch that parallels Fort Smith Boulevard on the north side and this enables a pedestrian to cross directly over the street from the north side to the Service Club, without getting off the sidewalk or pavement.

"A gravel alley leads off south of Fort Smith Boulevard 60 feet west of the west building line of Service Club No. 1, and it, also, leads off north of Fort Smith Boulevard 72 feet west of the field house.

"The principal means of transportation or conveyance of civilian employees at the camp, and soldiers, from Fort Smith to Camp Chaffee, and over the streets within the camp area, is by bus and private automobiles. Camp Chaffee Transit Company operates buses from Fort Smith into Camp Chaffee, and return. These buses enter

the camp area and proceed regularly along designated routes, over streets inside the camp area, one of them being 4th Ave. Bus stops are made at regular, designated places on those streets. Civilians and soldiers travel by bus and private cars upon the streets in Camp Chaffee. The regular bus fare from Fort Smith to Camp Chaffee, and return, is 35 cents. The nearest regular bus stop for a person going from Fort Smith to Service Club No. 1 is at the northwest corner of the intersection of 4th Ave. and Fort Smith Boulevard. This is approximately 360 feet west of Service Club No. 1.

"Service Club No. 1 is located at Camp Chaffee, on the south side of Fort Smith Boulevard, and about 360 feet east of 4th Ave. This is a recreation place where food and drinks are served to soldiers and civilians. It was always operated exclusively by civilian employees, under jurisdiction of the Special Service officers. That building set back 16 feet south of the stone sidewalk on the south side of the street. The main entrance to the building is through a double door in front of the building. There is another door east of this, which opens into the cafeteria building, and also a rear door to the building. The employees at Service Club No. 1 are permitted to enter the building through either door, but they generally use the main front entrance door. It is approximately 46 feet from the main front entrance door to the west line of northwest corner of the building.

"Etta M. Silence, a civilian, residing at 3526 Eller St., Fort Smith, Arkansas, entered the employ of Service Club No. 1 at Camp Chaffee, as civilian cook, on April 18, 1942. Her residence and employment in this capacity continued until the time of her injury hereinafter described. She traveled from her residence in Fort Smith, to and from her place of work, by bus of the Camp Chaffee Transit Company, paying her own fare. Her employer did not furnish her transportation. Her hours of employment commenced upon her arrival in Service Club No. 1, at 7:30 a.m. and terminated upon her departure from said place of work at 4:00 p.m., daily. Her average weekly wages in said employment at the time of her injury, hereinafter described, was $27.50.

"On the morning of February 15, 1944, Mrs. Silence left her home in Fort Smith en route to her work, and traveled by bus of Camp Chaffee Transit Company to the intersection of 4th Ave. and Fort Smith Boulevard in Camp Chaffee. She paid her own fare for transportation. The bus on which she was a passenger reached the regular, designated bus stop at the northwest corner of the intersection of 4th Ave. and Fort Smith Boulevard. She debarked from the bus there, at approximately 7:30 a.m. There were two ways by which she could then reach Service Club No. 1. She could have walked east and on the north side of Fort Smith Boulevard to a point opposite Service Club No. 1, crossing south, where there is a walk south over the drainage ditch, parallel with Fort Smith Boulevard on the north side thereof, or she could have crossed to the south side of Fort Smith Boulevard from the point where she debarked from the bus, or at any point between the place of such debarkation and Service Club No. 1, but on this occasion she followed the route usually followed by her in going to Service Club No. 1 from the bus stop. When the accident hereinafter described occurred, Mrs. Silence was walking east on the sidewalk on the south side of Fort Smith Boulevard, and had reached a point on said sidewalk 15 feet east of the west wall of said Service Club No. 1 building, and approximately 31 feet west of the main entrance of said building.

"Under the military rule in force, each organization within the camp area is required to police its own area. The hostesses in Service Club No. 1 are responsible for the policing (cleaning) of the sidewalks and grounds around its building, including the sidewalk running in front of the building where Mrs. Silence fell. The regularly employed janitors at Service Club No. 1, under the direction of the persons in charge of the Service Club, sweep and clean the sidewalk in front of the Service Club every day, and oftener when necessary. At times, when the janitor service at the Service Club is insufficient the hostesses sometimes request a detail of prisoners of war, but this request is done through the Camp Special Service officer, and not direct. Some two days before the accident

prisoners of war detail were used throughout the entire camp area, for cleaning away ice and snow, and some of the cleaning was done in front of the Service Club No. 1 building. However, Miss Kay Carden, the director of Service Club No. 1, personally directed the cleaning of the sidewalk where Mrs. Silence later fell, using for the purpose two of her own porters, and removed a coating of ice from the place at or near where Mrs. Silence fell. The prisoners of war did not clean that portion of the sidewalk for the reason that that portion had already been done by those in charge at Service Club No. 1. During the night before the accident of Mrs. Silence, water ran across the south sidewalk and froze at a place in the center of the sidewalk 15 feet east of the west wall of the Service Club building, and approximately 31 feet west of the main entrance door of that building. It was dark, and as Mrs. Silence walked along said sidewalk she slipped on said ice at that place, falling on the sidewalk, and sustained a fracture of the left ankle.

"Other civilian employees who arrived for work at Service Club No. 1, and were in that building, heard her cries, and immediately went to her aid. She was removed to St. Edward's Hospital in Fort Smith. Mrs. Silence died during the night of February 20, 1944. Her attending physician, Dr. J. E. Stevenson, of Fort Smith, states that: 'The death of Mrs. Silence was caused primarily by fractured ankle; secondary cause was pulmonary embolism.'

"Mrs. Silence left no last will and testament. She was survived by two sons, Earl Silence, born January 2, 1923, and Floyd Silence, born December 25, 1926, and two daughters, Eutha Ann Silence, born July 28, 1930, and Sarah Mae Silence, born October 19, 1939. She was not survived by a husband nor by any children other than those enumerated. Anna Bales, of Fort Smith, Arkansas, mother of Mrs. Silence, is the duly appointed, qualified and acting administratrix of the estate of Etta M. Silence, and is the duly appointed, qualified and acting guardian of the three minor children of Etta M. Silence.

"Service Club No. 1, prior to February 15, 1944, had complied with provisions of § 36 of the Arkansas Com-

pensation Law,* the insurance carrier being United States Fidelity & Guaranty Company. Said insurance carrier does not cover all civilian employees working at Camp Chaffee, but only those working at certain places there, one of them being said Service Club No. 1. Other insurance carriers cover workmen's compensation upon other civilian employees working at Camp Chaffee.''

Attached to the agreed statement of facts are two drawings showing the streets, sidewalks, buildings, including the Service Club building and the place where Mrs. Silence fell, and six photographs, but we think it unnecessary to incorporate any of these in this opinion, as the very full statement of facts which we copied sufficiently presents the question for our decision, which is one of law as there is no controversy as to the facts.

Excellent briefs have been filed by opposing counsel and myriad cases have been cited. Some of these are more or less similar under facts, to the instant case, while others announce principles which are said to be controlling. To review and differentiate these cases would require an opinion of interminable length.

Compensation was denied in the opinion prepared by the Commission in which the law was declared to be that, ''An employee is not required to be at the actual site of his work in order that an accident may be compensable,. but in our opinion (he must be at a place and engaged in activity which is under the control of the employer, before such employer shall be charged with the liability for the accidental injury).'' This finding is an application of the ''coming and going rule,'' which is that the master is not liable for an injury sustained by the employee while merely going to or returning from work, but there are certain exceptions to this rule.

We have several times said that the findings of the Workmen's Compensation Commission are, on appeal, given the same verity that attaches to a jury's verdict, or to facts found by the circuit court judge, when a jury has been waived. See *Barrentine* v. *Dierks Lbr. & Coal Co.,*

---

* Note: Act No. 319 of 1939.

207 Ark. 527, 181 S. W. 2d 485, and cases there cited. But in any and every case the sufficiency of the testimony to support the Commission's finding, or for that matter the verdict of a jury, is not a question of fact, but one of law, which this court will review on appeal. We have, therefore, copied *in extenso* the lengthy statement of facts as agreed upon by counsel, in order that we may determine as a matter of law whether the "coming and going" rule should be applied.

Among other cases cited and discussed in the briefs are our own cases of *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579; *Stroud* v. *Gurdon Lbr. Co.*, 206 Ark. 490, 177 S. W. 2d 181; *Cerrato* v. *McGeorge Construction Co.*, 206 Ark. 1045, 178 S. W. 2d 247.

In the first of these cases, the employee was held entitled to compensation, although he was not injured at the place of his employment, for the reason that in going to that place he was using transportation furnished for that purpose by the employer. Many cases were there reviewed, but the one chiefly relied upon was that of *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532, in which case Justice Sutherland, speaking for a majority of the court, said: "We attach no importance to the fact that the accident happened a few minutes before the time Parramore (the employee) was to begin work, and was therefore to that extent outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose."

In the second of the cases above cited, that of *Stroud* v. *Gurdon Lbr. Co.*, compensation was denied the employee while en route to his place of employment, for the reason that he was being transported in a conveyance not furnished by the employer for that purpose.

In the last of these cases, the Cerrato case, compensation was denied the employee, who was killed by coming in contact with a live electric wire, some four hours after

his working hours had ended, and at a distance of some three and one-half miles from his place of employment, his death having resulted from coming in contact with a live wire lying across a public road, which was as much a peril to the other users of the road as it was to Cerrato. It appears, therefore, that each case must be considered and decided upon its own merits.

While the "coming and going" rule which ordinarily denies compensation for an injury sustained while the employee is coming to or returning from the place of his employment is of general application, and has been applied by many courts, there are exceptions to the rule, one of these being that the injury is compensable if it occurs after the employee has reached a place so close to the employer's premises as to be considered a part thereof.

At § 445, Chapt. Workmen's Compensation Acts, 71 C. J. 716, it is said:

"An exception of the general rule that injuries sustained by an employee while going to or from work are not ordinarily compensable, injuries which occur to an employee while going to or from his work and after he has come upon the employer's premises or at a place so close thereto as to be considered a part thereof, or before leaving such premises or place, as the case may be, are held to be compensable. On the other hand, no compensation may be awarded for injuries sustained while going to or from work where the injuries occur away from the employer's premises and at places not subject to his control. Thus injury from an accident in the street or on a highway while on the way to or from work is not ordinarily compensable, unless the employment is such that the employee must travel the streets in order to perform it, or where the employee is subject to emergency calls, or where the employee is off the premises by reason of the express direction of the employer.'" A large number of cases are cited in the note to this text, which fully sustain it.

Here the employee was not only on her way to her place of employment, but for all practical purposes had

reached it. The drawings and photographs show that Mrs. Silence debarked from the bus at its closest stopping place to the club house and was following the only practical route thereto, certainly the most practical route. The agreed statement recites that, ''The sidewalk comes to an end at 3rd Ave. which runs north and south at the east line of the Service Club No. 1 premises, there being no other buildings or camp facilities of any kind east of said 3rd Ave., excepting a fire station just across 3rd Ave., and east of Service Club No. 1.'' In other words, Mrs. Silence had practically come to the end of the sidewalk on which she was walking, and had the choice only of entering the building where she was employed, or of retracing her steps. The concession was made in the oral argument of the case, that had Mrs. Silence fallen on the steps of the club building, her injury would have been compensable, but it is stipulated that she was within 31 feet of the steps, the main entrance, and she had all but reached that destination, and that this was her immediate destination is not questioned.

It was the view and finding of the Commission that the injury was a ''public street accident,'' and therefore was without the provisions of the Workmen's Compensation Act. It must be remembered, however, that this accident occurred within the confines of an army post, and while the public was admitted thereto, this was a right subject to the regulations imposed by the camp authorities, one of which denied admission to the public before 6 a.m. Another regulation provided that ''each organization within the camp area is required to police its area,'' and it was stipulated that ''the hostesses in Service Club No. 1 are responsible for the policing (cleaning) of the sidewalk and grounds around its building, including the sidewalk running in front of the building where Mrs. Silence fell.'' That duty had been discharged the day before, but not on the day of the injury, which was February 15, 1944, for the reason that the injury occurred just before 7:30 a.m., the time at which Mrs. Silence was required to report for work.

The point chiefly relied upon for the affirmance of the judgment is that Mrs. Silence was injured before

entering the building where her duties were to be performed. This argument formed the basis of the opinion of the justices who dissented in the case of *Barnett* v. *Britling Cafeteria Co.*, 225 Ala. 462, 143 So. 813, 85 A. L. R. 85, a case which arose in Alabama under a statute which defines compensable accidents in the exact words of our own statute. This contention was answered in the majority opinion as follows:

"The plaintiff reached the defendant's place just before time to punch the clock and go to work, but just before entering, and a few feet from the entrance, and while on the way to said entrance, she slipped on the ice on the sidewalk and sustained her injuries. True, she had not entered the defendant's place of business, but was upon the eve of doing so, and the opinion of Justice KNIGHT (who wrote the dissenting opinion) attaches great importance to the fact that she had not actually entered, but was upon a public street when injured. True the sidewalk was a public highway, but so much thereof as was in front of the defendant's place of business was a necessary adjunct and used in connection with the business and in which the plaintiff was employed, and the sidewalk was, to a limited degree, and purpose, a part of the defendant's premises."

To anyone wishing to pursue the inquiry further, we cite the annotated case of *Voehl* v. *Indemnity Ins. Co. of N. America,* 288 U. S. 162, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245.

It is uniformly held that this compensation act should be liberally and not strictly construed, and in our opinion a compensable case was made, and the judgment of the circuit court will, therefore, be reversed, and the cause remanded to that court with directions to order the Commission to make an award of compensation to be made as provided by law.