PENNY *v.* HUDSON DAIRY.

4-9426                                                    237 S. W. 2d 893

Opinion delivered March 26, 1951.

*Lee Ward,* for appellant.

*Reid & Roy* and *Wm. S. Rader, Jr.,* for appellee.

PAUL WARD, J. This is an appeal from the circuit court of Greene County which affirmed the decision of the Arkansas Workmen's Compensation Commission. Both the Commission and the lower court denied appellants' claim for two reasons. First, because the deceased was an independent contractor; and second, because the deceased, at the time of the accident which caused his

death, was not acting within the scope of his employment even though he had been classified as an employee rather than an independent contractor. Since we are affirming the case on the second ground, the question whether the deceased was an independent contractor or an employee will not be discussed.

The deceased, Alfonzo Penny, was killed June 25, 1949, in an automobile collision in Greene County, Arkansas. Appellants herein, who are the widow and children of the deceased, instituted an action before the Arkansas Workmen's Compensation Commission against appellees for recovery of compensation. At the time of his death the deceased was employed by Hudson Dairy of Paragould and had been so employed since December 7, 1948. Appellee, Hudson Dairy, carried compensation insurance with appellee, Maryland Casualty Company, a corporation. The Hudson Dairy operated a dairy at Paragould and purchased raw milk from the farmers in that community. It employed approximately eighteen people, five of whom worked on routes delivering its products. Some of the raw milk was delivered to the dairy by the farmers themselves, but a portion of it was gathered up by the deceased and brought to the dairy. There was no written contract setting forth the relationship and duties of deceased to the dairy, but part of his employment required him to use his own pick-up truck and to gather up the raw milk along a certain designated route and bring it to the dairy where it was unloaded. He then took the empty cans in his truck and returned to his home. Another and distinct part of his employment was to deliver bottled milk to the schools at Noble and some intervening points, but only when school was in session at such places. However, this part of his employment has no bearing on this opinion since school was not in session at the time of the accident.

The deceased's home was near Beech Grove on Highway No. 34 and was some fifteen or sixteen miles to the northwest of appellee's dairy plant. It was on this highway and seven or eight miles from the plant that deceased was killed on a Saturday morning at about eleven

forty-five on the date mentioned above. His activities on this morning were about the same as on every other morning when he made the same run to pick up and deliver milk to the dairy. With empty milk cans in his truck he left home and went over a gravel road some seven or eight miles in a northeasterly direction and crossed Highway No. 1-W and after crossing the last mentioned highway he proceeded on in the same direction some eight or ten miles on a gravel road, and then doubled back to the said highway, during which time he left empty cans and picked up the milk. Thence his route continued toward Paragould and the dairy where he arrived about eight or eight-thirty A. M. There he unloaded the milk and again loaded his truck with empty cans. Ordinarily on all days except Saturday, his work finished, he would go back to his home, first traveling on Highway No. 1-W and then turning to the left on Highway No. 34. On all occasions he would leave the empty cans in his truck preparatory to starting a new run the next morning. The deceased was always paid by the dairy on Saturday afternoon for his work during that week.

On the Saturday when he was killed, after deceased had unloaded the milk at the dairy, he washed his truck and, according to testimony, remained at the dairy for an hour or an hour and a half. There is no testimony showing what his activities were until he was killed at eleven forty-five that morning. After the accident it was found that his truck contained some groceries, some empty cans and some cans which had contained soured milk, but which had been spilled as a result of the accident. The evidence showed that on occasions some of the milk would be spoiled or soured and that frequently the deceased would buy this soured milk from the dairy for the price of seventy cents a can and would sell it for ninety-five cents a can to some of the farmers along his route who raised hogs, and that once in a while he would take some of the soured milk to his home and feed it to his own hogs. At other times the soured milk was returned to the owners by deceased as a part of his employ-

ment. On this occasion the dairy records do not show that the deceased had brought in any soured milk or had purchased any of it for himself or others. The records however are not conclusive because on some occasions the soured milk was detected before it was weighed and in some cases no record was made. Also it was conceded that the deceased might have been carrying some of this milk for himself or his customers and intended to account and pay for it upon his return. It is not denied by appellants that the deceased was acting upon his own when on these occasions he would buy the soured milk from the dairy and take it to his customers, and likewise when he took it home for his own use. The Hudson Dairy admits that on some occasions after the deceased had completed his run in the morning and after he had unloaded that he would do odd jobs for the plant and that they felt free to call on him once in a while, however the manager of the Hudson Dairy testified that after the deceased had unloaded his milk in the morning that he was free to go and do whatever he pleased until he began his run the next morning and that on the morning of the accident, after the unloading was completed, the plant made no further demands on the services of the deceased. The evidence shows that the deceased on all occasions did not go home for dinner on Saturday but would always wait until he had received his check.

Since, for the purpose of this opinion, but without deciding the point, we are treating the deceased as an employee of the Hudson Dairy the question for us to decide is, was there substantial evidence on which to base the findings of the commission that the deceased was not acting within the scope of his employment when he was killed? Ordinarily an employee's day's work does not include the time spent in going to or returning from his place of employment. The following language in the case of *Stroud* v. *Gurdon Lumber Co.*, 206 Ark. 490, 177 S. W. 2d 181, was quoted with approval:

"Where employee, after day's work has ended, proceeds to leave place of labor, choosing his own route and method of travel, master not having contracted to fur-

nish him transportation, for his personal convenience voluntarily mounts truck not property of nor under employer's control and is injured by mishap to truck not on premises of employer, injury was not received in 'course of employment' and is not compensable under Workmen's Compensation Law.''

Due to the fact the record is silent on deceased's activities from the time he left his place of employment any where from nine. to ten-thirty Saturday morning, it becomes necessary to consider what inferences the Commission was justified in drawing from certain facts and circumstances shown by the testimony. After the accident the truck was found to contain three items that might be considered significant, *viz*: groceries, empty milk cans and milk cans which contained soured milk. It could reasonably have found that the presence of groceries did not indicate, at least conclusively, that he was.going home for dinner because he had never before done so on Saturday, but had always waited for his check. The presence of empty cans has little if any significance because he at all times kept these in his truck even when using it for his own use. Appellants insist however that the presence of cans which had contained soured milk (it was spilled as a result of the accident) is an indication that he was on business for his employer because it was a part of his employment to return soured milk to the original owners. The Commission, however, could have found that other facts and circumstances overcame this inference. There is nothing in the record to indicate that deceased had been directed to return any soured milk on this occasion but, on the other hand, it shows affirmatively that he had not been given any such orders. Under the testimony the milk could have been for his own use or for his own customers to whom he often sold it. Moreover it could be concluded from the evidence and particularly from the.plat introduced that deceased was not on the road which apparently he would have taken had he been returning soured milk to the owners. He was killed on Highway No. 34 which leads directly to his home, while it appears his milk customers were on Highway No. 1-W,

and that he left the latter highway when he turned off onto Highway No. 34.

From the above we conclude that there is substantial evidence to justify the Commission and the lower court in holding the deceased was not within the scope of his employment when he was killed and the judgment must therefore be affirmed.