MARTIN v. LAVENDER RADIO & SUPPLY, INC.

5-1347                                        305 S. W. 2d 845

Opinion delivered October 21, 1957.

*LeRoy Autrey,* for appellant.

*Conway & Webber,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal is rather unusual, in that Howell L. Martin, appellant, who was awarded compensation under the Workmen's Compensation law, (because of a finding that he was injured in the course of his employment) is endeavoring to establish that he was not injured during the course of his employment, and is accordingly not covered under the Compensation Act. The facts are as follows: Hardware Mutual Casualty Company had issued a workmen's compensation insurance policy to Lavender Radio and Supply Co., Inc., (hereinafter called Lavender) employer of Martin. The company had also written a non-industrial accident policy covering Lavender's employees for off-the-job injuries. On December 20, 1955, Martin was employed by Lavender as a purchasing agent, and one of his duties consisted of obtaining the mail from the post office. Martin's workday commenced at 8 a. m., and it was within

his discretion either to get the mail on his way to the office or to send some other employee to the post office for the mail after he (Martin) had reported for work. The evidence showed that most of the time, Martin would go to the post office prior to reporting at the employer's premises, but that on other occasions, when running late, he would report to the place of business first. On the morning in question, appellant had traveled over three miles of the five mile journey to work when he was involved in a collision with another automobile. He was still some distance away from the point where he would turn off the direct route to work in order to go by way of the post office; that is, if going straight to the office, appellant would turn left at 7th and Ash, but if going to the post office, appellant would continue past Ash, and turn left at State Line. Martin was injured in the collision, and the question is, "Under which of the two insurance policies heretofore mentioned was he covered?" The policies are mutually exclusive, so that payment may be made under either policy for an accidental injury, but not both. Under our law, the carrier has a right of subrogation against a third party tort feasor for payments made under the workmen's compensation policy, but has no right of subrogation if payments are made under the group policy. Following appellant's injury, the insurance carrier commenced payment of benefits under the workmen's compensation policy, and has paid $442.86 for disability, and $1,488.95 for hospital and medical services.[1] Martin also filed suit against the party with whom he had the collision, and obtained settlement for $10,000, which amount has been placed in escrow.

Appellant petitioned the Workmen's Compensation Commission for a determination as to whether the injuries received by him were accidental injuries arising out of, and in the course of, his employment. Upon a hearing of the matter, the Commission found "That on December 20, 1955, claimant herein sustained an accidental injury arising out of and in the course of his employment with

---

[1] Estoppel is not being plead herein; the carrier rests upon the position that payments made were rightly in discharge of Workmen's Compensation liabilities.

respondent employer, Lavender Radio & Supply Co.,
Inc.; * * *.'' On April 2, 1957, the Miller Circuit
Court affirmed the finding of the Commission, and from
such judgment comes this appeal.

While several points are raised by appellant as
grounds for reversal, all relate to the master question,
''Were appellant's injuries sustained in the course of his
employment?'' As has been well established, if the find-
ings of the Commission are supported by substantial evi-
dence, such findings will not be disturbed on appeal to
either the Circuit Court or this Court. *Mechanics Lum-
ber Co.* v. *Roark,* 216 Ark. 242, 224 S. W. 2d 806; *Pearson*
v. *Faulkner Radio Service Co.,* 220 Ark. 368, 247 S. W. 2d
964. The evidence upon which the Commission based its
finding is set forth in its conclusions.

'' * * * In finding that claimant's accidental in-
jury did arise out of and during the course of his employ-
ment, we believe that there is substantial evidence herein
to support such a finding, and we point to the following
evidence: It was part of claimant's job to get the mail
from the post office and get it to the employer's place of
business the first thing each workday morning; at least
75 per cent of the time claimant, by his own admission,
went by the post office on his way to work and picked up
the mail; claimant gave a statement to the insurance car-
rier's adjuster within about three weeks after his injury,
and according to that statement, which was signed by
claimant, claimant was on his way to the post office at
the time of his injury; claimant at no time has denied
that he was on the way to the post office, but he has
merely stated that he did not know whether he was going
to the post office that particular morning before report-
ing to his employer's place of business, * * *.''

The general rule is, of course, that going to and coming
from work is not a part of the job,[2] and accidental inju-
ries occurring during such times are not compensable as
arising in the course of employment. Our own cases so

---

[2] *Penny* v. *Hudson Dairy,* 218 Ark. 594, 237 S. W. 2d 893. *Cerrato*
v. *McGeorge Contracting Co.,* 206 Ark. 1045, 178 S. W. 2d 247.

hold, though we recognize certain exceptions to this rule,[3] as do other jurisdictions. In the case of *Frank Lyon Co. v. Oates*, 225 Ark. 682, 284 S. W. 2d 637, this Court listed several exceptions to the "going and coming" rule. Included is an exception which appellee contends applies to the cause before us, *viz.*, "When the employee has a duty to perform for the employer while en route home." There is no reason, of course, why the converse would not be true, namely, if the employee has a duty to perform for the employer while en route to the place of employment. While the Lyon case approves this exception in principle, this Court apparently has not previously had the opportunity of applying this concept of law to facts arising within our state.

Both the briefs of appellant and appellee are well written, and cite numerous cases in support of the respective positions of each. As has been pointed out by John Haley in a rather comprehensive article relating to the subject, found in Volume 7, page 423, Arkansas Law Review:

"* * * In a leading case on the subject, the phrase 'arising out of and in the course of employment' has been defined as follows: 'An injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises out of the employment when there is apparent to the rational mind upon consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . But it excludes an injury which cannot be fairly traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. . . . It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk con-

---

[3] *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579. *Bales, Administratrix* v. *Service Club No. 1, Camp Chaffee*, 208 Ark. 692, 187 S. W. 2d 321.

nected with the employment and to have flowed from that source as a rational consequence.' But even a cursory examination of the cases construing this Protean phrase which is designed to limit liability under the Workmen's Compensation Act will reveal endless confusion and contradiction as to the scope of the terms involved. Certainly this bedlam includes the status of employer's liability to workmen injured while going to or coming from work. And the problem exists in Arkansas. * * * ''

Mr. Haley, however, makes mention of a particular case, which is also mentioned in both the briefs for appellant and appellee, *Marks Dependents* v. *Gray*, 251 N. Y. 90, 167 N. E. 181 (1929). The facts, as stated by Chief Justice Cardozo,[4] in that cause, were as follows:

" * * * Marks was a helper in the service of a plumber. His home and his place of business were at Clifton Springs, N. Y. On April 16, 1927, his wife went to visit relatives at Shortsville, where her husband promised to call for her in the family car at the end of the day's work. The employer, hearing that he was to make this journey, asked him to take his tools and fix some faucets that were out of order at a dwelling house in Shortsville. The job was a trifling one, calling for fifteen or twenty minutes of work. There would have been no profit in doing it at the cost of a special trip. It would have been postponed till some other time when it could have been combined with other work, if Marks had not stated that he would make the trip anyhow. He did not use the employer's truck, the vehicle set apart for travel in the course of business. He used his own or his father's car, set aside, it would seem, for the convenience of the family. Nothing was said by the employer about paying him for the job. The expectation was, however, that, for any work that he did, he would be paid at the usual rate for labor after working hours. On the way to Shortsville, when only about a mile from Clifton Springs, he was injured in a wreck, and died. * * * ''

In holding that the accident did not arise in the course of employment, Justice Cardozo said:

---

[4] Subsequently appointed to the United States Supreme Court.

" \* \* \* We think the accident did not arise 'out of and in the course of' any service that Marks had been employed to render. He was not making the journey to Shortsville at the request of his employer or for the purpose of doing his employer's work. He was making it in fulfillment of a promise to call for his wife at the end of the day, and bring her home in the family car. If word had come to him before starting that the defective faucets were in order, he would have made the journey just the same. If word had come, on the other hand, that his wife had already returned, he would not have made the trip at all. The employment did not bring him on the journey or expose him to its risks. If that is so, it is not 'out of the employment' that the injuries arose.

\* \* \* \* \*

"Unquestionably injury through collision is a risk of travel on a highway. What concerns us here is whether the risks of travel are also risks of the employment. In that view, *the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils.*[5]

\* \* \* \* \*

"In such circumstances, we think the perils of the highway were unrelated to the service. We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. \* \* \* ''

Let us apply this reasoning to the cause at Bar. Granting that the findings of the Commission, heretofore set out, were absolutely correct,[6] (and certainly there was substantial evidence to support such findings) we feel that the facts, as a matter of law, do not support the conclusion that appellant was acting within the scope of his employment. Referring to the italicized sentence in Justice CARDOZO's opinion, it certainly cannot be said in the instant cause that the duty of picking up the mail *sent*

---

[5] Emphasis supplied.

[6] Appellant, in testifying, varied from his previous written statement, in that he testified he did not know, and would not have known whether he would go to the post office until he reached the point where it would be necessary to deviate from the route to the office.

*Martin upon the journey.* Martin left home to go to work. That was his main objective in getting into his automobile and starting from the house. Certainly he was not leaving with the intention of picking up the mail and then returning back to the home. His duty to pick up the mail had no part in creating the necessity for travel, until he reached that point in his journey where he would deviate from the route to the office in order to go to the post office. Martin would have made this trip, and would have been in the exact location where the collision occurred, though he had no duty to pick up the mail.[7] It was simply a matter of convenience to get the mail before going to the office. If, on the other hand, for some reason, appellant had not been going to work on this particular day, some other employee would have been sent from the office to the post office.

Let it be made clear that we are *not* saying that an employee, on his way to work, *must deviate from the normal route* to perform some errand before he would be acting in the course of his employment. For instance, suppose that the post office had been located at a point th..t appellant would reach before arriving at 7th and As'.—on the same street that Martin traveled each day in going to the office. In such case, Martin would be acting with.. the scope of his employment when he drove up and stopp.. at the post office—and not before. Stopping would', c a deviation from the normal procedure of simply tra'.eling to work.

The reasoning set forth by Justice CARDOZO seems to us to be entirely logical and persuasive, and worthy of adoption. This, then, is the rule that governs this case. *"The decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils.* * * * *We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause,* * * * *"* and sufficient within itself to occasion the journey.

---

[7] Likewise, had word been received that the mail had already been picked up, Martin would still have made the trip to the office.

In accordance therewith, the judgment is reversed, and remanded to the Circuit Court with direction to remand to the Commission for the entry of judgment not inconsistent with this Opinion.

McFADDIN, J., dissents; MILLWEE, J., concurs.