HUNTER *v.* SUMMERVILLE.

4-7031                                    169 S. W. 2d 579

Opinion delivered March 1, 1943.

464

*J. H. Lookadoo,* for appellant.

*John H. Wright* and *Joseph Calloway,* for appellee.

ROBINS, J. The appellee, George Summerville, a timber cutter employed by the appellant, Harry Hunter, received serious and disabling injuries in a wreck of the truck on which he was riding to his home from his work. He filed claim for compensation for his injuries with the workmen's compensation commission. The claim was resisted by Hunter and his insurance carrier, who admitted that the appellee sustained the injury alleged—a compound fracture of the right tibia—but denied liability on the ground that the injury did not arise out of or in the course of his employment.

The commission made a finding of fact to the effect that the appellee "sustained an accidental injury arising out of and in the course of his employment"; that his earnings amounted to $12 per week; that the employee lived twelve or fifteen miles from the place of work; that he rode the employer's truck or one of the employer's sub-contractor's trucks each day in getting to work and had no other means of traveling to and from the place where he was cutting billets; that his employer intended to transport appellee to and from work when he hired him, and that he knew that the only way he could make use of appellee's services was to furnish transportation; that the evidence showed that all the workmen rode the employer's trucks or the sub-contractor's trucks indiscriminately; that there was no difference created in the legal situation by the appellee riding the employer's sub-contractor's trucks instead of the employer's trucks; and the commission awarded compensa-

tion to the appellee at the rate of $7.80 per week from the date of the injury to continue for the period of appellee's disability, and, in addition thereto, the expense of the necessary medical and surgical treatment. The employer and the insurance carrier appealed to the circuit court, where, on the record of the hearing before the commission, the circuit court sustained the award. From this judgment the employer and the insurance carrier have appealed.

The evidence before the commission disclosed that Summerville lived about fifteen miles from where the work was being carried on, and that his only means of getting to and from his work was by riding in one of the trucks that went into the woods for the purpose of hauling out billets of wood. Hunter was asked as to whether he had any arrangement with his men as to their transportation to and from work and he answered: "We had trucks going out there and if they wanted to ride they could." He further stated that on one of his trucks, which was driven by Hunter's brother, a little house had been constructed to keep the men out of the weather. Hunter had employed a sub-contractor named Wallace Jones to assist in getting out the pulp billets, and Jones' employees, as well as Summerville and other laborers, rode on Jones' truck. Hunter testified that no arrangement with Wallace Jones for Summerville or any others to ride on the Jones truck had been made, but he admitted that he was "taking care of Wallace Jones' insurance" under the Workmen's Compensation Law, and that enough money to pay the charges for compensation insurance on Jones' employees was retained by Hunter out of whatever amount was due Jones. Hunter stated that the custom was for his workmen to get on and off his brother's truck at a certain filling station. Appellee testified that there was nothing to prevent Hunter from knowing that at times appellee was riding home on Wallace Jones' truck, which passed some closer to Summerville's home than the truck driven by Hunter's brother, and that whether he got on board in the woods or at the filling station he sometimes rode Wallace Jones' truck if it happened to leave first. On the

occasion of the appellee's injury, according to his testimony, he boarded Jones' truck out in the woods and rode with him to the spur track, where the appellee helped Jones unload the billets, and that the collision which caused the wreck occurred while he was traveling in the Jones truck on the road to the neighborhood in which appellee lived.

The only question to be decided in this case is whether or not appellee's injury arose out of and in the course of his employment, so as to entitle him to the benefits of the Workmen's Compensation Law. While they are of comparatively recent origin, laws providing for a fixed compensation for workmen injured as a result of their employment have been enacted in many states of the union, as well as in England, and the courts have frequently been called upon, in jurisdictions where these laws are in effect, to determine whether or not a particular injury of a workman arose out of and in the course of his employment. The results that have been reached by the courts in arriving at an answer to this question are by no means uniform. Some of the courts of last resort have held that an injury sustained while going to and from work is not such an injury as comes within the purview of a workmen's compensation act; others have restricted the liability for an injury of this kind to one suffered by employees while using the particular mode of transportation furnished by the employer; and, in another line of decisions, the rule has been announced that almost any accidental injury suffered by an employee while in the service of the master entitled the employee to compensation, regardless of whether the injury was sustained while the employee was on his master's premises or was going to and from work, or was making a trip for some other purpose. An example of the latter rather extreme view is found in the decision of the English court in the case of *Richardson* v. *Morris*, 7 B.W.C.C. 130. In that case it was shown that a laborer was engaged on a farm on an island about a mile from the mainland. He lived there, in the farmhouse, and was paid a yearly wage. He was recently married, but his wife remained with her parents on the

mainland. One Sunday he wished to visit his wife, and his master ferried him over in his (the master's) boat. It was a rough day, and in attempting to land the man slipped, injured himself internally, and died soon afterwards. It was held that the accident arose out of and in the course of his employment.

In the case of *Lamm* v. *Silver Falls Timber Company*, 133 Ore. 468, 286 P. 527, 291 Pac. 375, the Oregon Supreme Court said: "This court, as well as other courts, has many times pointed out that the problem, whether an injury arises out of and in the course of the employment, is not to be determined by the precepts of the common law governing the relationship between master and servant; these ancient rules include the principles defining negligence, assumption of risk, fellow-servant doctrine, contributory negligence, etc. Likewise, all courts are agreed that there should be accorded to the workmen's compensation act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical constructions. Further, the cases agree that these acts do not mean one thing when it is to the advantage of an employee so to maintain, and something else when an employer invokes the protection of the act in his favor. One of the purposes of the workmen's compensation acts is to broaden the right of employees to compensation for injuries due to their employment. Since these acts contemplate compensation for an injury arising out of circumstances which would not afford the employee a cause of action, the right to redress is not tested by determining whether a right of action could be maintained against the employer. *Stark* v. *State Industrial Accident Commission*, 103 Or. 80, 204 P. 151. The word "employment," as used in such legislation, is construed in its popular signification. We quote from the decision of the Montana court in *Wirta* v. *North Butte Mining Co.*, 64 Mont. 279, 210 P. 332, 30 A. L. R. 964: 'The word "employment," as used in the workmen's compensation act, does not have reference alone to actual manual or physical labor,

but to the whole period of time or sphere of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do. . . . To say that plaintiff ''ceased'' working for the defendant is not equivalent to saying that he severed the relation of employer and employee'.''

A similar conclusion was reached by the supreme court of Colorado in the case of *The Industrial Commission et al.* v. *Ætna Life Insurance Company,* 64 Col. 480, 174 Pac. 589, 3 A. L. R. 1336. In that case a claim had been made for compensation by the widow of Charles E. Lynch, who was a construction foreman employed by a contracting company to supervise the construction of a number of telephone exchanges in different points in the Rocky Mountain states. Lynch had completed work on a station at Afton, Wyoming, and decided to go to Montpelier, Idaho, where he was to do similar work. He missed the regular stage, and, at the invitation of a friend, embarked in a Ford automobile to ride to a town in Wyoming, where he intended to board a train for Montpelier. The automobile was privately owned, and he went as a guest, paying no compensation. While on the road the car skidded and a wreck occurred in which Lynch sustained fatal injuries. The workmen's compensation commission, under an act containing language virtually the same as the Arkansas act, held that at the time of the injury Lynch was performing service arising out of and in the course of his employment. The district court set aside the award of the commission on the ground that the injury did not occur in the course of Lynch's employment, but the supreme court of Colorado reversed the decision of the district court vacating the commission's award, and said: ''Our courts are in agreement that these acts should be broadly and liberally construed, to the end that their beneficent intent and purpose may be reasonably accomplished. Upon this point it was said in *Zappala* v. *Industrial Ins. Com.,* 82 Wash. 314, 144 Pac. 54, L. R. A. 1916A, 295: 'In construing the language of the act, we must have in mind the evident purpose and intent of the act to provide compensation for workmen

injured in hazardous undertakings reaching "every injury sustained by a workman engaged in any such industry; and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received." *State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A., N. S., 466, and that the act should be liberally interpreted, to the end that the purpose of the legislature in suppressing the mischief and advancing the remedy be promoted even to the inclusion of cases within the reason although outside the letter of the statute, and that every hazardous industry within the purview of the act should bear the burden arising out of injuries to its employees regardless of the cause of the injury. *Peet* v. *Mills,* 76 Wash. 437, 136 Pac. 685,' L. R. A. 1916A, 358, Ann. Cas. 1915D, 154. Construing a statute similar to our own, it was said in *Young* v. *Duncan,* 218 Mass. 346, 106 N. E. 1: 'The purpose of this act has been stated several times. Briefly, it was to substitute a method of accident insurance in place of the common-law rights and liabilities for substantially all employees except domestic servants, farm laborers and masters of and seamen on vessels engaged in interstate or foreign commerce, and those whose employment is casual or not in the usual course of trade, business or employment of the employer, and probably those subject to the federal employers' liability act. It was a humanitarian measure enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the employers' liability act had failed to accomplish that measure of protection against injuries and of relief in case of accident which it was believed should be afforded to the workman. It was not made compulsory in its application, but inducements were held out to facilitate its voluntary acceptance by both employers and employees. It is manifest from the tenor of the whole act that its general adoption and use throughout the commonwealth by all who may embrace its privileges is the legislative desire and aim in enacting it. The act is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote

the accomplishment of its beneficent design.' The English workmen's compensation acts were adopted some years prior to that of any American statute on that subject, and the question now under consideration has been frequently construed by the English courts. The subject is reviewed at length by Mr. Chartres in his work on Judicial Interpretations of the Law Relating to Workmen's Compensation, 1915, beginning at page 137. It seems to be generally held by the English courts that employment is not necessarily synchronous with contract of service, but that in all those things that he is entitled to do by virtue of his contract, he is for the purposes of the act employed to do, and they are therefore within his contract of employment. The author quotes among many other authorities, the language of Farwell, L. J., in *Gane* v. *Norton Hill Colliery Co.,* (1909) 2 K. B. 544, which seems to be a fair statement of the English law: 'It is well settled that the employment is not confined to the actual working whether in a pit or at any other trade, in which the workman may be engaged. He is employed not only to work in the pit, but also to do other things that he is entitled to do by virtue of his contract or employment; for example, he is entitled to do, and therefore employed to do, such acts as coming on the employers' premises, passing and repassing for all legitimate purposes connected with his work on the premises, such as getting to the pit's mouth, going to get his wages, going to make proper inquiries from proper officers, or taking a train which he is entitled to use by virtue of his contract or service as in the cases of *Cremins* v. *Guest, Keen & Nettlefolds* (p. 151, 1 K. B. 469), and *Holmes* v. *G. N. Railway Co.,* 2 Q. B. 409. All those things that he is entitled to do by virtue of his contract he is for the purposes of the act employed to do, and they are therefore within his contract of employment. I would qualify this by saying that he must make reasonable use of the facilities and rights which are given to him in this way.' In the case at bar it was an essential part of his employment that the deceased should travel from the place where he had installed one plant to the place where he was to install

another. It is also clear that he adopted a reasonable, and apparently the only facility for such travel under the circumstances, and as safe as any other that may have been available.''

The supreme court of Utah, in the case of *Cudahy Packing Company* v. *Industrial Commission of Utah,* 60 Utah 161, 207 Pac. 148, 28 A. L. R. 1394, sustained an award, under a workmen's compensation act providing for the payment of compensation for the death by accident arising out of or in the course of employment, in favor of the widow of a packing house employee who was killed at a railroad crossing while riding to work in the automobile of another employee. The employer appealed the case to the supreme court of the United States, and there urged that liability had been imposed upon it arbitrarily and capriciously and in violation of the Fourteenth amendment to the federal constitution for the reason that the employee was killed on a public road off the premises of the employer, outside of the hours of employment, while the employee was not engaged in any business of the employer, and not as a result of any industrial risk. In affirming the decision of the lower court Mr. Justice SUTHERLAND, speaking for the court (*Cudahy Packing Company* v. *Parramore,* 263 U. S. 418), said: ''The modern development and growth of industry, with the consequent changes in the relations of employer and employee, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common-law liability of the master for personal injuries to a servant, leaving, of necessity, a field of debatable ground where a good deal must be conceded in favor of forms of legislation calculated to establish new bases of liability more in harmony with these changed conditions. Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and

the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say, that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory, though it need not be the sole or proximate cause. Legislation which imposes liability for an injury thus related to the employment, among other justifying circumstances, has a tendency to promote a more equitable distribution of the economic burdens in cases of personal injury or death resulting from accidents in the course of industrial employment, and is a matter of sufficient public concern (*Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 61 L. Ed. 685, 37 Sup. Ct. 260, Ann. Cas. 1917D, 642, 13 N.C.C.A. 927), to escape condemnation as arbitrary, capricious, or clearly unreasonable. Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.''

Other cases illustrating the tendency of courts to adopt a liberal construction of an act of this kind are: *Lovallo* v. *American Brass Company,* 112 Conn. 635, 153 Atl. 783, in which compensation was allowed for the death of an employee resulting from burns caused by the employee smoking during the lunch hour; *Kern* v. *Southport Mill,* 174 La. 432, 141 So. 19, in which the court, in sustaining an award to a pipefitter who was injured in the street while returning to the plant from

doing some work away from his master's place of business, said: "It has even been held that an employee is engaged about his employer's business whilst going to and coming from his employer's place of business, . . ."; *Inglish* v. *Industrial Commission of Ohio,* 125 Ohio St. 494, 182 N. E. 31, 83 A. L. R. 210, where it was held that the death of a teacher, who was struck by an automobile while on his way home from school carrying some examination papers to grade, arose out of employment; *Daniel Donovan's Case,* 217 Mass. 76, 104 N. E. 431, Am. Cas. 1915C, 778, in which a finding of the Massachusetts Industrial Accident Board to the effect that an employee riding home after a day's work in his employer's wagon with the consent of the employer was "incidental to his employment" was upheld.

In construing the Workmen's Compensation Law, this court, in the case of *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600, did not lay down any general rule, but the decision in that case evidenced a liberal interpretation of the act for the benefit of those whom it was intended to protect. The record showed that Walker, a farm hand employed by Lundell, was shot by Scott, Lundell's foreman, in an altercation which followed Scott's action in discharging Walker. The court sustained an award in favor of Walker's widow, holding that the death of Walker resulted from a hazard of his employment, and that the time elapsing between his discharge and his death was so short that it could not be said that Walker was not still an employee when he met his death.

As was pointed out by Justice Sutherland, *supra,* a decision in any case of this kind must depend upon the particular state of facts proved. In view of the fact that the evidence in this case established that transportation to and from his work was a prerequisite to the appellee's engaging in the timber cutting, and that there was an implied undertaking by the employer to furnish this transportation, as well as a tacit acquiescence on the part of the employer in the custom of his workmen riding on his sub-contractor's truck when it was convenient to do so, we conclude that the circuit court did not err in

sustaining the award made by the commission in favor of the appellee. The judgment of the lower court is, therefore, affirmed.