AUTO SALVAGE CO. v. ROGERS.

5-2269                                    342 S. W. 2d 85

Opinion delivered January 16, 1961.

*Barber, Henry, Thurman & McCaskill,* for appellant.

*Murphy & Arnold,* for appellee.

PAUL WARD, Associate Justice. This is a Workmen's Compensation case, and the sole question is whether there is substantial evidence to support the finding of the Commission which ruled the claim to be noncompensable. This finding of the Commission was reversed by the Circuit Court, and this appeal is prosecuted by the employer. The facts are not materially in dispute except for the expert medical testimony and the conclusions to be drawn therefrom.

W. E. Rogers, claimant and appellee herein, began working for the Auto Salvage Company sometime in 1956. His duties as a manual laborer included the use at times of an electric torch in cutting up scrap iron such as automobiles. In the early spring of 1958 a piece of metal lodged in claimant's ear, causing considerable injury and requiring extensive medication and treatment. The result of this injury was that claimant underwent an operation and has suffered pain somewhat continually up until the beginning of this litigation, although he resumed his regular work a few weeks after the injury. He has been paid in full for this injury, loss of time and medical treatment.

On Wednesday, October 29, 1958, while claimant was working at his regular job he noticed symptoms indicating a heart condition, when at about 4 p.m. he suffered pains in his chest. After resting a few minutes he resumed work until quitting time. On Thursday and Friday the chest pains continued, and on Friday the pains were constant until about 9 p.m. On Saturday claimant reported for work at the usual time, still feeling pains, and shortly thereafter he informed his employer

that he was going to a doctor. He reported to Dr. Charles Taylor of Batesville at about 8 o'clock that morning. After a somewhat thorough examination Dr. Taylor diagnosed claimant's condition as a coronary thrombosis and had him hospitalized for about two weeks, after which claimant returned to his home for rest.

It is conceded that claimant suffered a heart ailment, correctly diagnosed as coronary thrombosis, that this condition still exists, and that he has not been able to work at his regular job since November 1, 1958.

The Referee found that the injury was not compensable and later the Commission, after reviewing the evidence taken before the Referee and additional evidence presented to it, found that claimant had not proved that his heart attack occurred by reason of and in the course of his employment.

There is some testimony in the record to the effect that claimant first felt the chest pains on Wednesday (previous to the attack on Saturday) while he was engaged in trying to move a 450 pound scrap of metal. The Commission found that this fact was not substantiated by all of the evidence, and we think correctly so. Therefore, we consider this case as if there was no showing of unusual exertion on the part of the claimant. However, in accordance with our previous announcements, it is conceded that this is no bar to compensation. In other words, it is recognized that if claimant's normal working activities caused or contributed to his heart attack compensation may be established.

To sustain the judgment of the Circuit Court (which reversed the Commission) appellee's most serious contention is that his heart condition was caused or aggravated by the work in which he was regularly engaged, by the stress on his nervous system resulting from the injury to his ear, and by the anesthetic administered in connection with the ear operation. Specifically, then, appellee contends that there is no substantial testimony in the record to support the finding of the Commission.

Appellant contends, of course, just to the contrary. The decisive question then is: Was claimant's heart attack caused or contributed to by all or any of the incidents previously mentioned, and the answer to this question depends largely upon the medical testimony.

Dr. Taylor stated that, basically, coronary thrombosis is a disease of the arteries that supply the heart muscle with nourishment and oxygen, and it is the result of a pre-existing coronary disease called arteriosclerosis. In his opinion the claimant had a pre-existing arterial disease, and it was his opinion that claimant's work was a contributing factor to the coronary thrombosis; it was also his opinion that the stress caused by the ear injury was a contributing factor.

"Q. . . . I'll ask you if it is your opinion that but for this additional stress placed upon his heart by this infection and, also, by the emotion and worry and pain that the heart attack would not have occurred at the time it did in your opinion?"

"A. In my opinion, I think that the heart attack would have been postponed into the future had it not been for additional factors mentioned here of stress and additional work load placed on his circulation mechanism."

Dr. Taylor was asked if it was possible, with any degree of medical certainty, to tell what causes a coronary thrombosis, and his answer was:

"You asked me if there was any certainty of what precipitation cause could cause thrombosis. My answer to that is no, not exactly."

The doctor was also of the opinion that the anesthetic incident to the ear operation was a contributing cause but on cross-examination he stated that an anesthetic affects the heart only a few days or possibly a week after its administration.

Dr. Drew Agar of Little Rock, a specialist in internal medicine and diagnosis, testified as an expert but

made no examination of the claimant. At the end of a long hypothetical question propounded to him relative to claimant's condition, was asked:

"Q. . . . Doctor, could you express an opinion as to whether or not the work which this man was doing, a normal work that he was doing, was the cause or a precipitating factor of a coronary thrombosis?"

"A. Well, it would be my opinion that the work in no way contributed to the coronary occlusion."

Dr. David T. Hyatt, a recognized authority in heart diseases with extended experience, who examined claimant on March 23, 1959, at his office in Little Rock, stated that the electrocardiogram showed evidence of an old cardiac damage found in coronary thrombosis of long standing. After testifying at length he was asked and answered the following questions on cross-examination:

"Q. You certainly wouldn't say to this Commission that you know with a reasonable amount of certainty that if these factors had not been present in Mr. Rogers that he would have had the attack anyway."

"A. No; nobody but the Lord himself could say what's going to happen to anybody. All you can go by on that type of thing is the fact that many hundreds and thousands of other people go through the same type of things and don't have one."

"Q. Then you can't say that his work, his infection and his worry did not cause the heart attack, can you?"

"A. I can't say it didn't; but I can say I don't believe it did."

"Q. If you add, Dr. Hyatt, to the fact that Mr. Rogers was doing his normal work, if you add to that strain which the heart was already under the infection, the pain, worry, concern, is there any way of saying, in your opinion that those factors were not related to his heart attack?"

"A. Well, I don't know whether they're related to his heart trouble or not. We simply know that many

hundreds of patients his age develop coronary thrombosis. Some of them are sitting at a desk in a bank and doing nothing much except mental work; some of them are doing hard physical work; some of them have this and that, and I don't know. I don't know if he'd had an attack, if he had not had this or that."

The applicable rules by which we are governed in considering, on appeal, this kind of a case are well established and need only to be stated without discussion.

The burden is on the claimant to show a causal connection between his heart attack and his employment. See: *Pearson* v. *Faulkner Radio Service Company*, 220 Ark. 368, 247 S. W. 2d 964. We must give the testimony its strongest probative force in favor of the action and findings of the full Commission. See: The *Pearson* case *supra; Springdale Monument Company* v. *Allen*, 216 Ark. 426, 226 S. W. 2d 42; and, *Ark. Power & Light Co.* v. *Scroggins*, 230 Ark. 936, 328 S. W. 2d 97. The findings of the Commission have the same force and effect on review as the findings of a jury, and must be sustained if supported by substantial evidence. See: *Mosley* v. *Temple*, 231 Ark. 502, 330 S. W. 2d 719.

After carefully reviewing all of the testimony in the record, including that set out above and, also, the testimony of the claimant himself, we are forced to conclude that there is substantial evidence in the record to sustain the full Commission in finding "that claimant did not prove by a preponderance of the evidence that his heart attack was an accident that occurred by reason of and in the course of his employment."

To sustain the judgment of the Circuit Court (reversing the Commission) appellee has well presented some strong arguments to the effect that we should re-examine our decisions on what constitutes substantial evidence; that we should give more weight to the testimony of a doctor who had repeatedly seen and examined the claimant than to one who had not, and; that we should entirely discount and disbelieve the testimony of a certain doctor who testified. We find nothing in these contentions that

justifies us in changing the conclusion above indicated. We have many times discussed what constitutes substantial evidence and we think no useful purpose would be served in re-examining those decisions at this time. It is true that in some circumstances there would be good reasons for giving additional weight to the testimony of a doctor who examined the patient on numerous occasions and we have recognized this fact. Certainly this would be the case if such doctor had knowledge of facts not known to other doctors. However, in this case, it appears to us that all doctors were equally in possession of all the significant facts bearing on the causes of claimant's heart condition. Also, we have no way of knowing just what factors the Commission considered. It is not the province of this court to say which witness to believe or disbelieve. In the *Pearson* case, *supra,* we said: "The Commission had a right, just as a jury, would have had, to believe or disbelieve the testimony of any witness."

From a careful study of appellee's entire argument it seems he would have us hold that any time an employee, in the course of his regular employment, suffered a heart attack his claim should be compensable. Perhaps, due to the conflict and uncertainties in medical theories relative to the cause of heart attacks, this contention of appellee merits some consideration. However, any implementation of that contention is a matter for the legislature and not the judiciary. As the law now stands the burden is on the claimant to show a causal connection between his work and his heart attack. As we have frequently said in effect, the Workmen's Compensation Act is not an insurance policy.

Since we have concluded that the Commission's determination should be affirmed, it follows that the judgment of the Circuit Court must be and it is hereby reversed.

Reversed.

JOHNSON, J., dissents.