RUTHIE MAE BROOKS *v.* ROBERT E. WAGE ET AL

5-4179                                    414 S. W. 2d 100

Opinion delivered May 1, 1967

Howell, Price, & Worsham, for appellant.

McMillen, Teague, Bramhall & Davis; By: Thomas M. Bramhall, for appellee.

J. Fred Jones, Justice. This is a workmen's compensation case involving the question of whether or not the injury and resulting death of an employee grew out of and occurred within the scope of his employment. The Workmen's Compensation Commission held that it did. The Circuit Court on appeal reversed the Commission and we agree with the Circuit Court.

The claim was filed by Ruthie Mae Brooks, the widow of a deceased employee, Fred W. Brooks. The Commission rendered a thorough and comprehensive opinion in this case, but we do not agree with the legal conclusion reached by the Commission on the facts of this case. We conclude that there was no substantial competent evidence to support the findings and award of the Commission.

At the time of his injury and death, Fred W. Brooks had been employed for a number of years by Robert E. Wage in the general contracting business. He had worked on jobs all over Little Rock, including two or three jobs in the Broadmoor Addition. The decedent drove to and from work in his own pickup truck. He worked by the hour and his regular work day started at 8:00 a.m. and stopped at 4:30 p.m. The decedent lived in the Tie Plant area on the east side of North Little Rock, and for two days prior to February 15, 1965, he worked on his job in the Brookwood Addition to Little Rock, located off the new Benton Highway near the city limits in the extreme southwest section of Little Rock.

Early on Monday morning, February 15, the respondent employer called decedent at home by telephone

and requested him to stop by Long-Bell Lumber Company, 4501 Asher Avenue, and pick up some reinforcing rods and bring them on out to the job. On this point the employer testified as follows:

"Q. What were your instructions to him at that time?

A. I told him to come by Long-Bell Lumber Company and pick up some reinforcing rods and to go to No. 8 Rosewood, which is in the Brookwood Addition out behind Meadowcliff."

and at page ten of the transcript. Mr. Wage testified as follows:

"Q. Mr. Wage, what hours did Mr. Brooks normally work?

A. From eight to four-thirty.

Q Now, would you have had any reason to expect him to reach Long-Bell Lumber Company prior to eight o'clock?

A. No.

Q. Would you have wanted him to be on the job out there in—was it Brookfield?

A. Um-hum (nods affirmatively). No. Brookwood.

Q. By eight o'clock, or would it have been satisfactory to you if he had reached Long-Bell by eight o'clock?

A. No, his work time started at eight o'clock and I had no call on him before eight o'clock or after four-thirty.

Q. I see.

A. Unless we agreed to it.''

On the morning of February 15, the decedent left home about 7:00 a.m.; picked up two of his neighbor women who worked in Little Rock, drove south across the bridge from North Little Rock to Little Rock, then drove west out No. 10 Highway through the extreme north and northwest side of Little Rock, turned south onto Monroe Street from Highway 10 and delivered the neighbor women to the place of their employment at 1701 North Monroe Street. He then drove north on Monroe Street toward No. 10 Highway.

Decedent was killed in a collision at the intersection of Broadmoor and Berkshire Drives in the Broadmoor Addition lying west of University Avenue in the extreme west or southwest section of Little Rock, and several blocks northwest of Long-Bell Lumber Company, and several more blocks north of No. 8 Rosewood in the Brookwood Addition. The collision occurred about 7:30 or 7:35 a.m. while the deceased was driving in a northwesterly direction on Broadmoor Drive. He was traveling in a course that would have led him into Boyle Park or the intersection with west 12th Street. He had already crossed 12th Street in coming from North Monroe and was traveling in the opposite direction from Long-Bell Lumber Company, where he was not expected to be for another twenty-five or thirty minutes, when the collision occurred

There seems to be no question but that an employee is not within the course of his employment under the Arkansas Workmen's Compensation Act while traveling to or from his job before or after regular work hours unless he falls within one of several generally recognized exceptions to the ''going and coming'' rule.

This court has recognized various exceptions to the going and coming rule, such as where an employee has reached a place so close to the employer's premises as to be considered on a part of the employer's premises.

*Bales* v. *Service Club,* 208 Ark. 692, 187 S. W. 2d 321; where the employer furnishes transportation to and from the place of employment. *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579, in the case of traveling salesmen, where traveling is an integral part of the employment. *Frank Lyon Co.* v. *Oates,* 225 Ark. 682, 284 S. W. 2d 637, also where the employer agrees to furnish transportation, *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579.

Another exception, and the one argued in this case, is where the employee is on a special mission for the employer before or after regular working hours. Arkansas, as well as most states, recognizes this exception, but the gray area in this exception is broadened when the employee deviates from his route in performing the special service for his employer in order to perform special service for himself or for a third party.

To cite and attempt to distinguish the cases in this area of exception to the ''going and coming'' rule, would enlarge this opinion to text book chapter proportions, and there are already text book chapters on the subject; 8 Schneider, Workmen's Compensation, chapter 33, § 1733, and volume 7, § 1680; 1 Larson's Law on Workmen's Compensation, § 19.50.

The New York case of *Mack's Dependent* v. *Gray,* 167 N. E. 181 (N. Y. 1929) cited by appellant contains facts somewhat different from the facts in the case at bar. It primarily involved the ''dual purpose doctrine,'' but the opinion in that case by Chief Justice Cardozo presents sound reasoning on the ''going and coming'' rule and its exceptions, as well as the ''dual purpose'' doctrine, and has been followed by this court.

The deceased employee, Marks, made his home and place of business in Clifton Springs, New York. On the day in question, his wife was visiting in Shortsville, where Marks was to pick his wife up at the end of the

day. The employer, learning of the planned trip, asked Marks to take his tools and fix some faucets in a house in Shortsville. The job was of a small nature. There would have been no need for a special trip as no profit could have been derived. Marks did not use company transportation, but used his own automobile. He would be paid the normal wage, however.

Marks was killed enroute to Shortsville. The journey was not made at the request of his employer or for employer's work. The trip was made to fulfill his promise to pick up his wife.

In the Mark's case, Chief Justice Cardozo states the issue as follows:

"Whether the injury was one 'arising out of and in the course of the employment' is the question to be answered."

In arriving at the decision in that case, Chief Judge Cardozo speaking for the New York Court of Appeals, says:

"Unquestionably injury through collision is a risk of travel on a highway. What concerns us here is whether the risks of travel are also risks of the employment. In that view, the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils.

\* \* \*

"In such circumstances we think the perils of the highway were unrelated to the service. We do not say that service to the employer must be the sole cause of the journey, but at least it must be the concurrent cause. To establish liability, the inference must be permissible that the trip would have been

made though the private errand had been cancelled. We cannot draw that inference from the record now before us. No, on the contrary, the evidence is that a special trip would have been refused since the pay would have been inadequate. The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

Perhaps our own case of *Martin* v. *Lavender Radio & Supply, Inc.,* 228 Ark. 85, 305 S. W. 2d 845 (1957), also cited by appellant, is more in point with the case now before us.

In that case, Martin, the employee, was employed as a purchasing agent, and one of his duties consisted of obtaining the mail from the post office, by either stopping himself while on his way to work, or sending another employee, at Martin's discretion. In going to work Martin drove on a certain street, he turned left from this street when going directly to work, but traveled further on and turned right when going by the post office. Unless he was tardy, Martin would usually collect the mail himself before going to work. On the morning in question, Martin had traveled some three-fifths of the distance to work when he was injured in an automobile collision. If going to work Martin would have turned left, if going to the post office he would have continued some distance further before turning right. The collision occurred before he reached the first turning point.

The Commission awarded compensation, the Circuit

Court affirmed the award of the Commission. In reversing the Circuit Court judgment, this court recognized the exception to the "going and coming" rule, when the employee has a duty to perform for the employer while enroute home after regular working hours, and then this court said:

"There is no reason, of course, why the converse would not be true, namely, if the employee has a duty to perform for the employer while enroute to the place of employment . . . this court apparently has not previously had the opportunity of applying this concept of laws to facts arising within our state."

This court then cites with approval from Mark's Dependents v. Gray, supra, and says:

"Let it be made clear that we are not saying that an employee, on his way to work, must deviate from the normal route to perform some errand before he would be acting in the course of his employment. For instance, suppose that the post office had been located at a point that appellant would reach before arriving at 7th and Ash—on the same street that Martin traveled each day in going to the office. *In such case, Martin would be acting within the scope of his employment when he drove up and stopped at the post office—and not before. Stopping would be a deviation from the normal procedure of simply traveling to work.*

"The reasoning set forth by Justice Cardozo seems to us to be entirely logical and persuasive, and worthy of adoption. This, then, is the rule that governs this case. 'The decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils. *** We do not say that service to the

employer must be the sole cause of the journey, but at least it must be a concurrent cause. ***' and sufficient within itself to occasion the journey.'' (emphasis supplied).

Workmen's compensation insurance is not *life* insurance. The burden rests on the claimant to prove that the accident grew out of and occurred within the course of employment, and while the Commission is obligated to resolve any doubt in favor of the injured employee, and the Circuit Court and this court are obligated to affirm the Commission on appeal if there is any substantial evidence to sustain the finding of the Commission, *Auto Salvage Co.* v. *Rogers,* 232 Ark. 1013, 342 S. W. 2d 85; the doubt resolved by the Commission must be a reasonable doubt and substantial evidence must be competent evidence and it must be of a substantial nature and not based on surmise and conjecture.

In Martin v. Lavender, the employee had not reached a point where his additional duties would have taken him out of the usual ''going and coming'' rule and placed him within the exception and within the course of his employment.

In the case at bar, even if we assumed that the decedent was placed within the course of his employment upon the receipt of the phone call to go by Long-Bell, there could be little doubt that he was outside the scope of his employment while traveling on an entirely different route and mission, and in a different direction from his home in North Little Rock through the north side of Little Rock to discharge his passengers on North Monroe Street. There would have been no doubt at all that he would not have been within the scope of his employment had the employer not asked him to go by Long-Bell and he had been on the way from his home to his regular job site off the new Benton Highway when the accident occurred, or if his employer had simply told him ''I want you to work at the Long-

Bell Lumber Company today.'' Neither would there have been much question but that Brooks would have been within the course of his employment under the facts of this case had he gone directly from his home to Long-Bell, and the accident had occurred after he turned off his regular course to work in order to go to Long-Bell, even though he was not expected to go to Long-Bell until the store opened at 8:00 a.m., *Martin* v. *Lavender, supra.*

So, the main question here is whether or not the employee was within the "going and coming" rule, or was within the exception at the time of his injury. If he was within the rule, that is, if he was simply going to work, when did the exception apply, if it did? If he was at any time within the exception to the general rule and departed from it, when did he re-enter the exception and what was his status at the time of his injury?

The deceased's employer did not know he was taking women to work on North Monroe Street, however, that was none of the employer's concern because the employer had "no call on him" before 8:00 a.m. From the record before us no one knows why the deceased was in the Broadmoor Addition on the west side of Little Rock, but that is where he was when the accident occurred and he was not traveling toward Long-Bell at 4501 Asher Avenue, nor was he traveling toward his regular work place off the new Benton Highway. He was traveling in the opposite direction from both places. Perhaps he had lost his way to Long-Bell, as well as to his regular job site. But perhaps he had thought of another errand he wished to perform. Perhaps he had forgotten to tell or ask his passengers something and was returning to North Monroe Street. Perhaps he had even decided not to work that day, all of these "perhapses" are pure conjecture, but one of them is as logical as any other and neither constitutes evidence of any degree whatsoever.

A mere request or order from an employer that a service be performed by the employee while going to the regular place of employment before the work day begins, does not automatically and *per se,* place the employee within the course of his employment. The employee must at least engage in the course of carrying out the assignment, or returning from having done so, before he can be said to be within the course of his employment. To hold otherwise would make it too easy to carry compensation coverage to the scene of an accident, and would convert the "going and coming" rule into the exception and unduly shift the burden of proof in compensation cases.

In the case of *Johnson* v. *Clark,* 230 Ark. 275, 322 S. W. 2d 72, at page 279 of the state report, this court said:

"The coming and going rule is an affirmative one in the sense that the employee has the burden of showing that it does not apply, for otherwise any injury occurring between his departure from his home and his return would presumptively arise out of and in the course of his employment."

Had the deceased been injured on his way to North Monroe Street, in the case at bar, the evidence would not be substantial that he was on his way to Long-Bell, and to have assumed he was lost would not have supplied substantial evidence. There is no question but that the deceased was on a mission of his own in going to North Monroe Street rather than to Long-Bell on Asher Avenue, and it is just as logical to assume that he was not lost and was still on a mission of his own, as it would be to assume that he was lost and trying to go to Long-Bell when he was injured while traveling northwest in Broadmoor.

A more specific question here, is whether or not the duties of the decedent's employment exposed him to the

hazards he encountered at the place where he was injured, and we conclude that there is no substantial evidence that it did. We have not overlooked the "dual purpose" doctrine in arriving at our conclusion in this case. We conclude that if the deceased had a dual purpose in traveling northwest in Broadmoor at the time of the accident, going by Long-Bell Lumber Company was not one of them. The only evidence in the record that the decedent was on his way to Long-Bell when the accident occurred, was the evidence that his employer told him to go there and his own statement that he was going to do so.

The judgment of the trial court is affirmed.

Affirmed.

GEORGE ROSE SMITH, J., dissents.