PRUITT v. MOON.

5-1913                                                    328 S. W. 2d 71

Opinion delivered October 12, 1959.

*Wiley A. Branton,* for appellant.

*John A. Davis, III,* and *Bridges & Young,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal relates to an order of the Workmen's Compensation Commission denying and dismissing the claim of appellant for compensation. Jimmie Pruitt alleged that he suffered a total loss of vision in his right eye, the result of being struck in this eye by a piece of stone in October, 1956, during the course of his employment with the Moon Monument Company. A hearing was conducted before a Referee in January, 1957, and the claim denied and dismissed. Appellant's right eye was removed by operation in February of the same year, and a hearing on his appeal was held before the full Commission on April 16, 1957. Their denial of compensation was affirmed by the Jefferson Circuit Court in a judgment entered September 25, 1958. From such judgment, comes this appeal.

The sole issue before this Court is whether there was sufficient competent evidence in the record to warrant

the making of the order by the Commission. The testimony of Pruitt is rather vague, and in fact, conflicting, in that he gave several different versions of the manner in which his eye was injured. According to Dr. Louis Hundley of Pine Bluff, Pruitt stated that he had gotten a piece of steel in his eye three months prior to October 15, 1956 (date of the first examination by Dr. Hundley). He stated to Dr. R. E. Glasscock of Pine Bluff, that he had gotten a piece of stone in his eye about August, 1956. In a signed statement of November 9th, Pruitt stated that he had gotten a piece of stone in the eye about two months prior to the date of the statement, and within an hour after getting the piece of stone in the eye, had also been struck in the same eye by a piece of steel. In his testimony before the Referee on January 18, 1957, he was very positive that the injury had occurred three days before his first visit to Dr. Hundley (which would be October 12, 1956). Harry Humes, a fellow employee, stated that while working with appellant, Pruitt stated that he had been hit by a piece of steel or rust from some iron Humes was sawing, but the witness was unable to give any date, stating that it was in the early part of 1956. J. B. Hughes, a stone cutter for the Moon company, by deposition taken on April 29th, 1957, testified that Pruitt complained of getting a piece of stone in his eye while they were working, but Hughes could not even state that it had happened in 1956. Dr. Hundley testified that on examining Pruitt on October 15, 1956, he found the right eye red, inflamed, and watering. "The cornea was clear; the pupil was small and showed some adhesions. The lens of the eye was opaque; no foreign bodies or scars were in evidence." Appellant stated that he had already been to a doctor to get the piece of steel out, but it had not been removed, still scratched, and Dr. Hundley stated that it was hard to convince Pruitt there was no piece of steel in the eye. Upon being interrogated as to whether he found any evidence of injury to the eye, Dr. Hundley replied: "In view of the history that Jimmie gave me at the time, I felt that this was an inflammation as the result of a

prior injury.'' He found no foreign bodies or scars in the eye. According to the doctor, Pruitt stated that the injury had occurred ''about three months prior.'' He did not again see Pruitt until December 10th, at which time the condition of the eye had grown worse. The diagnosis of Pruitt's condition by Dr. Hundley was ''acute iridocyclitis of the right eye with complicated cataract.'' He stated that in addition to trauma, such a condition could be brought about by a severe case of iritis; that iritis can be caused by allergy, and infections in the body, and that the latter two are more common causes for the condition, than injury. He was of the opinion that the instant case was traumatic in origin, though he stated that he had accepted the history as related by Pruitt to the effect that the injury had occurred three months before, and he testified that his findings relative to the eye were consistent with an injury which had occurred that long before. The doctor was definitely of the opinion that the condition had been outstanding for more than a three day period. After the removal of the eye, Dr. Hundley submitted a report in March, 1957, stating that his diagnosis was the same as that previously given, ''acute iridocyclitis, right, probably the result of injury.''

Dr. Glasscock examined Pruitt on December 18, 1956, and was told by Pruitt that he (appellant) had gotten a piece of stone in his right eye about four months previously. The doctor found Pruitt suffering from iridocyclitis or endophalmitis, but saw no objective evidence of trauma. Dr. Glasscock stated that appellant's condition could be caused by an injury, but that the cause is more often the result of an infection in other parts of the body; for instance, in the teeth, tonsils, etc. He testified that he had also examined Pruitt in April of 1955, at which time Pruitt stated he had been struck in the eye with a small piece of rock. Dr. Glasscock testified that he found only a minor injury at that time. On still another occasion, he had examined appellant (January 10, 1956), and Pruitt gave a history of getting something in his left eye, four days previous to that examination. Dr. Glasscock stated that Pruitt

had iritis in the left eye at that time, but he did not feel that it was traumatic in origin. He also testified that the injury of April, 1955, would not have caused the iritis of January, 1956, for the reason that there was not enough injury. The doctor was unable to state definitely as to the cause of the condition in December, 1956, but was of the opinion that the condition was not due to trauma. It will be noted that neither of these physicians were positive, but this is not surprising in view of the fact that both agreed such a condition could be caused either by infection or trauma, and considering the uncertainty of the date of the alleged injury, it is understandable that the doctors were unable to make a more definite finding.

Neither Dr. Hundley nor Dr. Glasscock ever found any foreign object or substance in claimant's eye. After the removal of the eye, it was sent to Dr. B. E. McCain, a pathologist, who sectioned the entire eye, and studied it microscopically. The doctor's report stated: "No foreign body was found grossly or microscopically." In arriving at their conclusion that appellant had failed to show by a preponderance of the evidence that his condition was the result of injury, the Commission stated:

"* * * we believe the conclusion reached by Dr. Glasscock is more consistent with the history of this claimant's ailment and claimant's prior difficulties of a similar nature with his other eye. The fact that no foreign substance was, upon medical examination, found in claimant's eye, and that characteristically one suffering from systemic iritis erroneously feels the presence of such a foreign substance, is a persuasive factor in this case."

We are of the opinion that the record contains sufficient competent evidence to justify the Commission's findings, and to warrant the making of the order. That being true, it necessarily follows, under numerous decisions of this Court, that the judgment of the Circuit Court should be, and hereby is, affirmed.

ROBINSON and JOHNSON, JJ., dissent.

JIM JOHNSON, Associate Justice, dissenting. There can be no doubt as to this claimant's permanent loss of vision in his right eye since that eye has been removed and is now gone forever. An abundance of substantial testimony was offered to show that this claimant did actually suffer an injury in the course of his employment and that he was treated for three separate injuries to his eye. Nowhere in the record can it be found that claimant's present condition is not the result of an accident suffered in the course of his employment. It is true that the testimony relative to the exact date of the last injury is somewhat in conflict. However, the evidence reveals that claimant, who is an ignorant negro, had a very poor memory for dates.

None of the doctors who testified could positively say that the condition of claimant's eye was not the result of a trauma. There was some testimony that such a condition could result from infection or disease. A careful review of the record will not reflect one scintilla of evidence to the effect that the claimant was suffering from any disease or foci of infection which would cause any spontaneous iritis condition.

It is a well established principle of law that the Workmen's Compensation Law "should be liberally construed and not strictly construed." *Bales* v. *Service Club No. 1, Camp Chaffee,* 208 Ark. 692, 187 S. W. 2d 321; *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579. We have held many times that in construing the Workmen's Compensation Act its terms should be liberally construed so as to "provide compensation to an employee actually disabled." *Ark. National Bank, et al,* v. *Colbert,* 209 Ark. 1070, 193 S. W. 2d 806. See also: *Elm Springs Canning Co.* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113. In the recent case of *Hollifield* v. *Bird & Son, Inc.,* 227 Ark. 703, 301 S. W. 2d 27, we reversed the finding of the Commission on the grounds that the evidence did not support a finding which denied compensation even though there was a conflict in the medical opinions.

Even if this was a doubtful case, we have held that doubtful cases should be resolved in favor of the claimant.

*Boyd Excelsior Fuel Company* v. *McKown,* 226 Ark. 174, 288 S. W. 2d 614; *Reynolds Metal Co.* v. *Brumley,* 226 Ark. 388, 290 S. W. 2d 211. In the instant case the only question of doubt is whether the appellant lost his vision in his right eye as the result of a spontaneous iritis or from trauma. In *Stout Constr.* v. *Wells,* 214 Ark. 741, 217 S. W. 2d 841, we held that where one of two opposing inferences would support a compensation award and the other would defeat it, a construction favorable to claimant ought to be adopted if factually sound even though an equally substantial inference thereby fails. Finding no substantial evidence to support the finding of the Commission, I respectfully dissent.

Mr. Justice SAM ROBINSON joins in this dissent.