RAY *v.* GARNER CONSTRUCTION Co.

5-3002                                        370 S. W. 2d 73

Opinion delivered May 20, 1963.

[Rehearing denied September 9, 1963.]

*McMath, Leatherman, Woods & Youngdahl* and *Jon P. Sizemore,* for appellant.

*Barber, Henry, Thurman & McCaskill,* for appellee.

SAM ROBINSON, Associate Justice. This is a workmen's compensation case. Appellant, Hollis W. Ray, who lives at Sheridan, claims that he was injured while working for appellee, D. H. Garner Construction Company on a job in North Little Rock on June 10, 1960. The Workmen's Compensation Commission denied compensation and Ray has appealed.

On the 23rd day of June, 1960, Ray was operated on for two ruptured discs. There is no question about the discs being ruptured. The only issue is whether there is

substantial evidence to sustain the Commission's finding that Ray was not injured in the course of his employment.

Appellant is 42 years of age and has been a heavy equipment operator for many years. He also preaches on occasion. In April, 1960, he went to work for appellee operating heavy equipment, such as bulldozers, motor graders, etc. Some time prior to June 11, 1960, he made arrangements with his employer to take off from work the week beginning June 13 so that he could help to conduct a revival meeting in Pine Bluff. He worked up until noon Saturday, June 11, the usual quitting time for the week.

The next day, Sunday, June 12, and also on Monday and Tuesday, he preached at Pine Bluff. On Wednesday, June 16, he drove from his home at Sheridan to Pine Bluff to attend the revival service. His wife was with him and they stopped at a super market to get some groceries. He stooped over to get a box of crackers; a sharp and severe pain struck him in the back causing him to become prostrate with pain on his back on the floor of the super market. His wife called Dr. Heirs, a chiropractor of Pine Bluff who had treated Ray for back trouble 10 or 15 times since March 9, 1960. Dr. Heirs immediately went to the super market where Ray was still on his back on the floor. With the help of others the doctor got him into an automobile and took him to the doctor's office. There, a medical doctor was called who administered some shots for pain.

Later Ray returned to his home and the next day went to see Dr. Guy Smith, a chiropractor in Little Rock. This was on Thursday. The following Saturday Dr. Smith recommended surgery to relieve the back condition, and then, for the first time, Ray notified his employer of his claim of having been injured eight days previously. Dr. Horace Murphy was called and the following week, on June 23, he operated and found two ruptured discs which he repaired. Ray was off from work about 4 months and has a 20% permanent disability.

The issue is not whether the evidence is sufficient to sustain a finding other than that made by the Commission, but is there substantial evidence to sustain the order that the Commission did make. Definitely, there is substantial evidence to sustain the Commission.

Appellant claims he was injured in the course of his employment in this manner: He testified that a short time before the end of the work day on Friday, June 10, he cleaned the tracks of the tractor he was operating, and a stone weighing 10 or 12 pounds was lodged in one of the drive sprockets; that he dislodged it; that he tossed it aside and felt a sharp and severe pain in his back. He claims that at that time he injured his back and that such injury resulted in two ruptured discs. This is the alleged injury for which the Commission denied compensation.

There is no evidence at all that appellant received an injury as he claims, except what he says about it; but there is substantial evidence that the discs in appellant's back were not ruptured as he claims on June 10, 1960. Appellant does not say that he felt any pain when he removed the rock from the sprocket, but claims that when he tossed it aside he felt a sharp and severe pain, but notwithstanding such pain he got back on the tractor and drove it to the usual parking place for the night. Although there were two other men on the job, he said nothing to them about having been injured and nothing about being in pain. He drove to his home at Sheridan Friday night and drove back to work the next day and worked the usual time for Saturdays, 5½ hours. Again he said nothing about having been injured and his fellow workers observed nothing unusual about him as he went about his work in the ordinary manner.

Although in making his claim for compensation he says he was in great pain the Saturday morning following the alleged injury on Friday, he drove from his work in North Little Rock to his home at Sheridan, and on Sunday he went to Pine Bluff to preach at the revival. He again attended the revival on Monday and Tuesday. On Wednesday he drove from his home at Sheridan to

Pine Bluff, and while stooping for a box of crackers in a super market, he suffered the injury that disabled him. He claims to have had a severe pain in his back ever since the alleged injury in North Little Rock on Friday. It would not be unreasonable for the Commission to believe that if he was suffering such pain he would not have stooped for the crackers.

The act of stooping in itself was sufficient to cause his disability. Appellant says that he bent his knees in stooping for the crackers. This would put him in a squatting position. Dr. Murphy, who operated on him, testified that a squatting position seems to produce more ruptured discs than anything else. Moreover, Dr. Murphy testified that it does not take a severe injury to cause a ruptured disc; that it can be caused by pushing back a chair or bending over; that a slight motion can cause this type of injury; such things as coughing or sneezing could cause this particular condition that appellant complained of. No doubt appellant had a weak back when he stooped for the crackers. He testified to having had trouble with his back for 10 or 15 years. Dr. Smith corroborated him on that point.

Furthermore, appellant testified that prior to the time of the alleged injury he had X-ray pictures made of his back, but at the time of the hearing before the Commission he said he could not remember who made the pictures. He spoke in a derogatory manner of the doctors who made the pictures, but still could not remember who the doctor was, nor did he produce the pictures. His testimony on that point may have caused the Commission to believe that if his memory was a little better the doctor who made the pictures could have been called as a witness and the X-rays produced, clearing up the question of when the discs ruptured.

Appellant admitted to having had a pain in his back at the point of the ruptured disc ever since two weeks after he went to work for appellee; that the pain had been constant since that time up to the time of the operation; that the pain had gone down into his toes and the ball of his foot. He stated that he had taken sleeping pills in

order to sleep; that the pills had been prescribed for his wife, but he did not know what doctor had prescribed the sleeping medicine. Perhaps the Commission thought it remarkably strange that a man would not know what doctor was prescribing for his wife.

Dr. John Hundley, an orthopedic surgeon, examined Ray on behalf of the appellee and testified positively that Ray denied to him that he had ever had any trouble with his back prior to the alleged episode on June 10, 1960. The record is replete with evidence to the effect that Ray had been having trouble with his back for many years. Dr. Hundley also testified that if appellant had received an injury causing a ruptured disc as he claims on June 10, the pain would have been so excruciating he could not have worked 5½ hours the following day and could not have preached at Pine Bluff.

When all the evidence is considered, it cannot be said that it is not substantial to sustain the finding of the Commission.

Affirmed.

HARRIS, C. J., and JOHNSON, J., dissent.

CARLETON HARRIS, Chief Justice (dissenting). I find no substantial evidence to justify the finding of the commission denying compensation in this case. Certainly, the fact that he did not report the injury to his employer until eight days later should not be held against appellant, since *the statute gives him sixty days* from the date of such injury to make such a report.[1] Nor do I attach a great deal of significance to the fact that he did not tell two fellow employees about the injury. To place importance on this fact would seem to imply that an injured employee *must* tell a fellow worker that he has been hurt—and this, in spite of the fact that he is *only required to tell his employer within sixty days*. Apparently, the referee did not believe Ray's testimony that he received such an injury on June 10, though his (and the commission's) finding is not predicated on such a fact. However, comment relative to the testimony of Dr.

---

[1] § 81-1317, Vol. 7A, Ark. Stats., 1960 Replacement.

Ottis Hiers indicates that the referee felt that Ray might be withholding facts.

The referee, in his "Conclusions," stated:
"The report of Dr. Hiers, the Pine Bluff chiropractor who examined the claimant just after the incident in the Pine Bluff grocery (Claimant's Exhibit 2 in transcript of 9-28-60 hearing), states that he felt the back condition was due to a job injury related by the claimant as having occurred the previous week at work. Dr. Hiers made no mention of claimant's bending over to pick up a box of crackers, causing the Referee to wonder if the claimant failed to relate it or if Dr. Hiers disregarded it."

Apparently, some significance was attached to this fact, or the referee would not have mentioned it, but the subsequent testimony of Dr. Hiers, whose deposition was taken, clearly dispels any suspicion that Ray was holding back any facts from the doctor. The testimony of Hiers established that Ray gave to him a complete history. From the testimony:

"Well he stated that he was just—of course, they were buying groceries and he had—was going down the aisle and I think his wife was—usually are ahead of their husbands and so forth in grocery stores and he just reached over to pick up a box of crackers and a pain hit him in the back just like that. In other words, there was no mention of him slipping or anything on the floor, anything, that wasn't the case."

In fact, Hiers was asked specifically about both incidents (the rock-throwing incident on the job, and the intense pain suffered when picking up the box of crackers). From the testimony:

"Q. Well, first of all, I would like to ask you if in your opinion there is any connection with the rock throwing incident and the herniated discs based upon those various factors, is there any connection in your opinion?

"A. Well, in my opinion, there had to be previous damage. When we study the makeup of the spinal column, they just don't rupture by bending or picking up

a box of crackers. There had to be previous damage and if that—from the information that he gave me, that is very possibly where the whole thing started. That is where he incurred the damage. * * *

"Q. What would you say was the mechanical function, if any, of the picking up the box of crackers incident which took place just before you saw him in June, in other words, what part did that play in the total disc condition, would you say?

"A. Well, I don't think that that was a major cause. I think the damage had been done previously. It would have had to have been done before that because you couldn't—I don't see any way that you could do that much damage just picking up a box of crackers. The damage had to be previously done in my opinion."

It is thus obvious that the apparent suspicion held by the referee that Ray was withholding facts, was certainly, at least in this instance, unjustified.

Dr. Hiers had already flatly testified that, based upon the condition in which he found Ray, on June 15, 1960, (at the supermarket), based upon the history of the case and Ray's description of what had happened at the job, and, further, based on the fact that Ray was operated on by an orthopedic surgeon, Dr. Horace Murphy, and three extruded herniated discs were found, it was his opinion that the "rock-throwing incident" was the occasion where Ray incurred the damage to his back.

The referee concluded his finding with a reference to the testimony of Dr. Horace Murphy, as follows:

"If Dr. Murphy's statement that excruciating pain could not be long endured, the claimant has not made a case on an injury of June 10, 1960, and if Dr. Murphy's statement that the most recent injury caused the back condition, then such resulted from the incident in the supermarket on June 15, 1960. The claim is denied and dismissed."

Dr. Murphy, in his report, recited the history that had been given to him by Ray. This history is entirely

consistent with appellant's testimony. Murphy recited that Ray told him that he had difficulty "off and on" for the last several years with his back, but had managed to get along fairly well and do heavy work. From the history, Ray told Murphy that he had felt considerable pain in his back while bending over in a crouched position for the purpose of removing a large rock from the machinery that he was operating. Further, that he rested for a while, continued to work, but the pain increased. According to the doctor, he was also told that approximately five days following the initial injury, Ray suffered excruciating pain in the right hip and right leg posteriorly. When asked whether the cracker box incident would have caused the condition which Dr. Murphy found Ray to be suffering from, the doctor replied:

"No. I think the man gave a perfectly straight forward history, having pain when he picked up the rock in a flexed position, I would say from a physiological standpoint that the extruded disc at that time caused this, that is my opinion that this resulted when he was injured originally. * * *

"Q. Can you say with any degree of medical certainty when this disc did extrude whether it was when he lifted or bent over and had excruciating pain in the grocery store?

"A. No, I think if I had to make a statement as to when it actually happened, I would say when he picked up the rock and had the original pain at that time."
Still further:

"Q. Now, if you had a condition such as this man had, do you think in your opinion, that it would be possible for him to continue his work?

"A. I think so for a time. *In fact, the history of it is that usually the patient doesn't have to be taken to the hospital immediately.*[2a] He almost always states that he felt something in his back and that he felt an aching pain in his back and that they try to continue to work. *It is almost rare for a patient to stop work. We have literally*

---

[2a] and [b] Emphasis supplied.

*hundreds of cases and the history that we have taken the patient felt the next morning when he got up a stiff back or he was stiff in the back and he tries to go to work and may do so for a week, at this time the disc probably is developing.*[2b]

Certainly, the reports of these two doctors do not substantiate the findings of the referee. Yet, the referee, according to his opinion, portions of which have been herein quoted, apparently relied in large measure upon the testimony of these two doctors to support his finding. In fact, the referee only mentioned the testimony of three doctors in his opinion (the other being Dr. Guy Smith, whose testimony will be hereinafter discussed), and the testimony of all three of these men, to my way of thinking, substantiated Ray's contention. The referee (nor the commission) did not even mention the testimony of Dr. John Hundley, who was the only physician to testify on behalf of the company. Since neither the referee, nor commission, saw fit to comment on Dr. Hundley's testimony, apparently not relying on same, I see no reason for detailed comment. In fact, Dr. Hundley (who examined Ray about a year after the occurrence) stated: "Therefore, I am of the opinion that this patient has had a back operation and that if his history is correct that he did sustain an injury that produced this condition in the lower back requiring an operation."

Dr. Hundley then pointed out that Ray had had prior back trouble and stated:

"I believe this question is not one of a medical nature but that of a legal nature to determine whether or not he did have an injury to the lower back."

The majority say, "There is no evidence at all that appellant received an injury as he claims, except what he says about it; * * *." That statement is literally correct, but there are circumstances that verify appellant's contention. The majority opinion mentions the incident wherein Ray stooped over to get a box of crackers, and suffered the severe pain. It is then related that Dr. Hiers was called, and subsequently a medical doctor

was also called, the latter administering shots for pain. The opinion then recites, "Later Ray returned to his home and the next day he went to Dr. Guy Smith, a Chiropractor in Little Rock." This is the first mention by the majority of Ray's making a visit to Dr. Smith.

Apparently the majority have overlooked Dr. Smith's testimony that Ray went to Smith *on June 11,* which was the next day after the claimed injury on the construction job. Dr. Smith stated that Ray told him at that time that he had developed a severe pain in his lower back while trying to remove a stone from the machine that he was operating. *This certainly corroborates Ray's contention that he received an injury on June 10.* The incident referred to in the majority opinion (the intense pain while stooping to pick up a box of crackers) did not occur until five or six days later. It is true that Ray did again go to Dr. Smith after this occurrence—but his first visit was made the day following the alleged injury on the job—with a full description to that doctor of what had happened. Two days later, Dr. Smith recommended surgery, the employer was notified, and Dr. Murphy was called.

To summarize, we have the testimony of Dr. Horace Murphy, who felt that Ray's condition was caused by the injury *sustained on June 10* (rather than the cracker box incident)—the evidence of Dr. Ottis H. Hiers, who was likewise of the opinion that the condition was caused by the injury on June 10 (rather than the cracker box incident)—and the testimony of Dr. Guy Smith that Ray reported to him the job injury on June 11 (which was several days before the cracker box incident). I consider that the testimony of these men, all of whom are highly reputable, constitutes substantial evidence to support appellant's claim. On the other hand, to support the commission's finding, we have the testimony of two fellow employees that Ray did not report to them that he had been injured, and the fact that Ray did not report the mishap to his employer for eight days. I am unable to consider this testimony as substantial evidence to deny the claim.

664

I, therefore, respectfully dissent.

I am authorized to state that Mr. Justice Johnson joins in this dissent.