POTLATCH FORESTS, INC. *v.* SMITH.

5-3099 374 S. W. 2d 166

Opinion delivered January 13, 1964.

[Rehearing denied Feb. 3, 1964.]

*Williamson, Williamson & Ball,* for appellant.

*Huey & Rothwell,* for appellee.

CARLETON HARRIS, Chief Justice. This is a Workmen's Compensation case. Sylvester Smith was employed by Potlatch Forests, Inc., and contends that on September 19, 1961, he sustained a compensable injury, which resulted in the loss of his right eye. Appellant company controverted the claim, contending that the injury did not arise out of, and in the course of, his employment. The referee heard the evidence, concluded that the claim was compensable, and entered an order accordingly. The company appealed to the full commission, and that body found that a preponderance of the evidence sustained appellant's contention that Smith's injury did not arise out of, and in the course of, his employment. The referee's opinion was therefore reversed, and the claim for compensation denied and dismissed. There-

after, claimant appealed to the Bradley Circuit Court, and the court reversed the finding of the Commission and remanded the case back for orders consistent with the award of the referee. From the judgment so entered, the company brings this appeal.

The only question before this court is whether there was any substantial evidence to support the finding of the Commission. Preliminarily, we might dispose of one of the arguments advanced by appellee. It is pointed out that the referee, who originally tried this case, heard all of the witnesses in person, both for claimant and the company, and, on appeal, no additional testimony was presented to the Commission. Appellee states that the referee, therefore,

"* * * was the sole and exclusive judge of the weight of the evidence and the credibility of the witnesses. In case of contradictions or inconsistencies he had the right to accept the testimony of the witnesses he believed to be most worthy of credit and reject the testimony of those he believed less worthy of credit, or accept, any part he believed true and reject any part he believed untrue. He was in position to take into consideration all the surrounding circumstances of each witness, and of particular importance, the manner and demeanor of each witness on the witness stand. * * *"

This contention must be rejected. As recently as October 21 of last year, we had occasion, in *Moss* v. *El Dorado Drilling Co.*, 237 Ark. 80, 371 S. W. 2d 528, to comment upon this contention, stating,

"We take this occasion to point out that it is the duty of the Commission to make a finding according to a preponderance of the evidence, and not whether there is any substantial evidence to support the finding of the Referee."

Cases are then cited in support of the statement. Thus, as stated at the outset, we can only concern ourselves with whether the finding of the full Commission was supported by any substantial evidence.

Claimant's case was primarily dependent upon the testimony of Smith himself. Appellee testified that he commenced work for Bradley Lumber Company in 1952, and had been working for that company and its successor, Potlatch, since that time.[1] He stated that on September 19, he worked from 6:00 A.M. until 2:30 P.M. His duties consisted of pulling lumber off "the green chain." At 2:30, he "punched out," but waited around on the dock for about ten minutes to determine whether all night shift workers appeared, it being his purpose to put in extra time by work on the night shift if any workers were absent. During this period, he sat and smoked a cigarette. After observing that all of the night crew had reported in, he got up and started toward his parked car, walking underneath the conveyor belt. After walking ten or fifteen feet, his foot struck a stick, which "flew up" and hit him in the eye. Subsequently, he stated, "I remember my feet hitting the stick and something flew up and hit me in the eye is all I can say." The witness said he could not see out of his eye, but that he did not have any pain at that time. He could feel something "running" out of the eye, and wiped it with his handkerchief, but walked right on to his car and drove home. Smith testified that when the foreign object hit him in the eye, he sat down a few minutes, and then walked on, no pain occurring until after he reached his home. Appellee stated that he was able to drive his car normally, and that it took him about five or six minutes to drive from the plant to his house. Claimant's wife took him to the hospital about 3:00 P.M. Around 4:00 o'clock, Smith reported the accident to Herbert Bliss, yard foreman.

Smith's wife, Velma, testified that her husband drove up to the house, but didn't get out of the car. When she inquired as to the reason, he complained of his eye, and she then "taken him out of the car and carried him in the house." Velma then drove her husband to the hospital. This testimony was corroborated by Rosa Benson, a neighbor.

Gilbert Block, a resident of Warren, testified that he (Block) had an artificial right eye, having lost the

---

[1] No prior claims were indicated from his work record.

sight of his eye while working on his automobile, "and a piece of steel flew off and hit me and went through it." Block stated that he did not feel any pain in the eye until four days after it happened, "after Dr. Lanford took it out."

Smith's eye was treated by Dr. James W. Marsh of Warren, who stated that he understood Smith to say that "something flew out of the clock (time clock) and hit him. But I am not at all sure of this because he was in pain and does not speak very clearly, and I didn't question him on the history." Dr. Marsh found "a laceration of the center of his cornea which was transverse with a slight ellipse. It had penetrated all the way through his cornea and had dislodged the lens to some extent so that the lens was partially protruding through this laceration. There was fluid escaping from the inside of the eye." The iris was not struck by the object. In reply to a question as to whether he had any opinion concerning whether the object which caused the eye injury came from the ground level, the doctor replied, "I don't think it could have." As the basis for this conclusion, Marsh stated that "the object hit him in the central cornea and went through the cornea and through the lens with no injury at all to the iris. And the angle of an object coming up from ground level from near him would have been such that to have penetrated both the central cornea and the lens would have caused some injury to the iris." The doctor was of the view that the object came from approximately eye level, rather than from the ground. He likewise was of the opinion that the injury was not caused by a stick. The physician also testified that, in his judgment, initial pain would have been marked and severe, and probably would have continued from the time of the occurrence until Smith was taken to the hospital.

Dr. Marsh, after rendering emergency treatment, immediately made arrangements for Dr. W. R. Nixon, a Pine Bluff ophthalmologist, to see the patient. The history taken by Dr. Nixon reflected that Smith had stepped on a stick which "flipped up" and struck claim-

ant in the right eye. Smith was complaining of intense pain, and, most of the time, kept both eyes shut, particularly the right one. The doctor testified that at the time he saw appellee, he (Nixon) wondered about the injury being caused by any object from the ground. "Because when something flips up, hitting the eye, it would strike at an angle. Unless he was looking down at the ground it was rather difficult for it to go through the eye without perforating the iris." The doctor stated, "I wouldn't necessarily say it hit at eye level. He could have been lying on his back and it dropped in his eye." Nixon was of the opinion that the object "would have to be reasonably sharp or thrown with extreme force to penetrate the eye, one or the other, or both. A blunt object hitting the eye would require a great deal of force to penetrate the eye. They are a lot tougher than we think. For instance, a beebee gun so often hits the eye and bounces off. They cause a hemorrhage and damage, but bounce. * * * Another thing, this thing apparently hit between his lids, and the eye has a rapid blink reflex. It has to hit with pretty good speed to hit the eye without damaging the lids." The doctor was of the opinion that the injury described by Smith would have caused severe pain for at least a few minutes, probably "five to ten minutes." Thereafter, he stated that the eye certainly wouldn't feel normal; there would be a certain amount of discomfort.

"I would think that, after looking at him, that the man was unable to see immediately from the injury out of that eye. Of course he has the other eye. He has been a two-eyed man and suddenly becomes a one-eyed man for all purposes. I am sure he has a loss of depth perception, plus peripheral vision. He could still drive. He would certainly be doing something a little bit difficult because he has had a sudden and abrupt change that he has never had to cope with before."

Efforts were first made to save the sight of the eye, but subsequently, it became necessary to remove it. The testimony of these witnesses comprises the case for appellee.

On behalf of appellant, Arthur Weaver, a fellow employee of Smith, testified that on September 19, at 2:30, he was in the outhouse located across from the "green chain." He heard the 2:30 siren blow, and came out a minute later. Weaver stated that he saw Smith, who was walking between the conveyor belt and the parking lot (having already passed under the belt), heading toward the lot. From subsequent measurements, Weaver testified that when he first saw Smith, the latter was "27 long steps" east of the conveyor belt,[2] and twenty-four steps away from the witness. He said that Smith was walking toward his car, smoking a cigarette, with both hands down beside him. Smith was walking in his usual manner "in a kind of frisky way, the way his pants dangled on him when he walked."

Clifton Roberts, another employee of Potlatch, testified that on the date Smith was injured, he (Roberts) "punched out" with the others at 2:30 P.M., and walked directly toward the parking lot. While walking beneath the conveyor belt, he observed appellee about twenty-five steps away, not quite half way between the belt and the parking lot. According to the witness, Smith "was just walking along normal," was not holding his eye, and there was no indication that anything was wrong with the claimant. Roberts testified that he saw Smith back his car out from where it was parked, and drive away.

Charlie Brown, another employee, testified that he left work at 2:30, and went straight to the parking lot; that he knew where Smith usually parked his car, and that Smith's car had already been moved from its usual location when the witness arrived at the parking lot. Subsequently, he passed Smith's house, and noticed that claimant's car was not there. A block or so later, he observed the Smith car "headed north towards home." Linton Marks, another employee, rode with Brown, and testified to substantially the same facts, viz, that Smith's car was not in its usual parking place when he reached

---

[2] This meant that Smith had already passed under the conveyor belt, and had walked that distance from it.

the parking lot; that claimant's car was not at his home when they passed, and that subsequently they observed Smith, approaching approximately a hundred yards away.

Kirby McClendon, employed by Potlatch as a personnel worker, testified that Smith and his wife reported the injury to him between 4:00 and 4:30 P.M. (apparently after seeing Bliss). Smith told the witness that he stepped on a stick which flew up and hit him in the eye, the accident occurring under the lumber conveyor belt. McClendon, Herbert Bliss, and Pete Denson, assistant yard foreman, all testified to various contradictions and discrepancies in Smith's account, and that of his wife. For instance, Bliss stated that claimant said that "he started out and walked right across the ramp and got across the ramp to the corner and said he set down there and set there fifteen minutes and smoked a cigarette and he got up from there, walked across the railway track, under the conveyor belt and about nine spaces I believe Sylvester spaced it off himself, he said he felt something under his foot and it flew up and hit him in the eye or something hit him in the eye, said at that time it hurt him so bad he fell down on his knees and caught his eye with his hands, stayed there a little bit and got up and went on to the car with his hand over his eye and got in the car and drove home." Further, that Smith stated that his eye hurt "bad" and in wiping it, "he got some bloody water on his hand." The foreman also stated that he checked the area for sticks, and found but one.

Appellee asserts that the Commission committed an error of law in its finding, contending that the claimant is entitled to an award of compensation if there is any substantial evidence to justify the claim. Appellee is mistaken in this statement. It is true that our Compensation Act should be broadly and liberally construed, but it is also true that the burden of proof is placed upon the claimant to establish that his disability was occasioned by an injury received in the course of his employment. *Pruitt* v. *Moon,* 230 Ark. 986, 328 S. W. 2d 71.

The commission determines litigation from what it deems to be the preponderance of the evidence, and we affirm if there is any substantial evidence to support the Commission's ruling. *Chicago Mill and Lbr. Co.* v. *Fulcher*, 221 Ark. 903, 256 S. W. 2d 723; *Moss* v. *El Dorado Drilling Co,. supra.* Of course, it is established that Smith injured his eye. It is likewise established that the injury occurred between 2:30 and 3:00 P.M. on September 19, but we are unable to say that the Commission's finding (to the effect that the injury did not occur on the premises) is not supported by substantial evidence. Actually, it is apparent that the Commission did not place credence in Smith's testimony, and there is no requirement that that body must accept, at face value, the testimony of a claimant—or for that matter, the testimony of any person. A similar situation existed in the case of *Ray* v. *D. H. Garner Construction Co.*, 236 Ark. 654, 370 S. W. 2d 73. In that case, Ray testified to a back injury. Admittedly, he had suffered such an injury (as here, Smith admittedly had suffered an injury). Ray testified that this injury happened on the job, and detailed the circumstances relative to the occurrence. No one was able to verify that the injury happened in the course of employment (as here). However, in *Ray*, two doctors testified that, in their opinion, Ray incurred the injury to his back from the incident described by him, rather than from a subsequent injury which occurred off the job. Dr. Horace Murphy testified that the history recited by appellant was entirely consistent with his testimony. However, the Commission denied the claim, obviously because it did not believe appellant's testimony. It is apparent that a similar situation exists in the instant case, *i.e.*, the Commission was not persuaded by claimant's version of the manner in which the injury occurred. And there are facts which support the position taken.

According to the testimony of Weaver and Roberts, both observed Smith *after* the stated time of the accident, *i.e.*, he had already passed the place where he alleged the injury to have been received. Both testified that Smith was proceeding toward his car in his usual manner, giv-

ing no indication that anything out of the ordinary had happened to him. Bear in mind the testimony of Roberts who testified, that, after checking out, he proceeded immediateley toward his own car in the parking lot. It would have been impossible for Roberts to have seen Smith walking toward his car if the latter, as he testified, had waited around for at least ten minutes before leaving. This witness also observed claimant, apparently acting in a normal manner, driving his car from the premises. Witnesses Brown and Marx testified that they (separately) walked to Brown's truck, and that Smith's car was not in its regular parking place. This evidence corroborated the testimony of Weaver and Roberts that Smith had, instead of staying around the plant, immediately left the premises. Claimant admitted that he had parked his car, on coming to work, at his usual parking place.

As stated, there was a direct conflict in the evidence. If the testimony of these four witnesses was correct— then Smith's testimony was incorrect. If Smith's statements relative to the injury were true—then, the evidence of these four witnesses was false. There is nothing in the record which indicates that these co-workers had any reason to deliberately prevaricate as to what they had observed. In addition, the evidence of both doctors tends to contradict Smith's version.

At any rate, even though we might feel that the Commission had reached the wrong result, we are without authority to upset the finding, unless there is no substantial evidence to support the order. *Fagan Electric Co.* v. *Green,* 228 Ark. 477, 308 S. W. 2d 810. Undoubtedly, there was evidence in behalf of both Smith and the company, which could be considered substantial evidence—but the Commission is the trier of the facts, and a determination of the weight of the testimony falls within its province.

In accordance with the reasoning herein set out, the judgment of the Circuit Court is reversed, and the cause is remanded with instructions to affirm the order of the Commission.

ROBINSON and JOHNSON, JJ., dissent.

Jim Johnson, Associate Justice (dissenting). I do not agree with the majority opinion. In my view there is no dispute in this case about the facts. Appellee clocked out from work at 2:30 p.m.; he waited around the area for approximately ten minutes; walked under the conveyor belt towards the parking lot; was struck in the eye by some object; the doctors both testified the material around this area would be a producing cause of the injury they found if appellee were struck in the eye; appellee arrived at home at 2:45 p.m.; two of appellant's own witnesses observed him in his car driving home; appellee was taken immediately to the hospital and it was stipulated he was seen by Dr. James W. Marsh, M. D. at 3:00 p.m.

". . . The Appellee stated he did not know what hit him in the eye. The Appellee told both these doctors that the incident occurred at the mill. It is not to be expected that an ordinary individual, immediately after suffering the traumatic loss of an eye, would think to fabricate a story as to how it happened upon first examination by a physician within twenty or thirty minutes subsequent to the incident. It is reasonable to conclude that an ordinary individual, knowing that the physician's successful treatment of an injury might well depend on his knowing the cause therefor, would tell the physician the truth concerning the cause . . . It is also apparent, that in the tragedy of the moment, an ordinary person does not cooly reflect on a fictitious tale as to where an incident occurred." [Referee's opinion.]

Appellee lost the sight of his eye;—all this took place between 2:30 p.m. and 3:00 p.m.

The time element alone in this case demands an affirmance of the judgment of the Circuit Court. Couple this with the fact that against the positive testimony of appellee's witnesses, the self-insured appellant even with the apparent full cooperation of its employees couldn't produce one witness who would testify that the accident

did not occur at the time or place or in the manner alleged by appellee.

For the reasons stated, I respectfully dissent.

Mr. Justice ROBINSON joins in this dissent.