JESSE WILLIS DECEASED EMPLOYEE *v* CITY OF DUMAS
AND HARTFORD ACCIDENT AND INDEMNITY CO.

5-5546                                          466 S. W. 2d 268

Opinion delivered April 19, 1971
[Rehearing denied May 24, 1971.]

*Paul K. Roberts,* for appellant.

*Bridges, Young, Matthews & Davis,* for appellees.

J. FRED JONES, Justice. This is a workmen's compensation case involving injury and subsequent death of Jesse K. Willis as a result of an automobile collision. The single question presented is whether the injuries sustained by Mr. Willis grew out of, and occurred within the course of, his employment as Chief of Police of the City of Dumas in Desha County, Arkansas. The collision occurred in Jefferson County while Chief Willis and his wife were in route from Dumas to Pine Bluff. The Workmen's Compensation Commission found that the accidental injuries did not arise out of and occur within the course of the employment, and the circuit court affirmed. On appeal from the judgment of the circuit court, the appellant relies upon the following points for reversal:

> "There is no substantial evidence in the record sufficient to support the judgment of the court and the opinion of the full Commission and said judgment and opinion were based on surmise and conjecture.

> The court erred as a matter of law in failing to award benefits to which he was entitled."

The burden rests on the claimant to prove by a preponderance of the evidence before the Commission, that he is entitled to compensation benefits under the law. *Pruitt* v. *Moon,* 230 Ark. 986, 328 S. W. 2d 71. And, if there is any substantial evidence to support the decision of the Commission, the courts must affirm. This rule has been stated so often that citation of cases would add volume without value to this opinion.

The Arkansas Workmen's Compensation Law only covers accidental injury and death *arising out of* and *in the course of* employment. Ark. Stat. Ann. § 81-1302 (d) (g) (Repl. 1960).

Ark. Stat. Ann. § 81-1305 (Repl. 1960) provides, in part, as follows:

> "Every employer shall secure compensation to his employees and pay or provide compensation for

their disability or death from injury arising out of and in the course of employment. . ."

The burden of proof is on a claimant to show that injury or death of an employee was the result of an accidental injury that not only arose in the *course of employment,* but in addition that it arose *out of or from* the employment. *Duke* v. *Pekin Wood Products Co.,* 223 Ark. 182, 264 S. W. 2d 834.

In *Martin* v. *Lavender Radio & Supply, Inc.,* 228 Ark. 85, 305 S. W. 2d 845, this court adopted the rule laid down in an opinion by Chief Justice Cardozo in the 1929 New York case of *Mark's Dependents* v. *Gray,* 167 N. E. 181. This rule was quoted again with approval in *Brooks* v. *Wage,* 242 Ark. 486, 414 S. W. 2d 100, and as stated in *Lavender,* is as follows:

"The decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils. * * * We do not say that service to the employer must be the sole cause of the journey, but at least. it must be a concurrent cause. * * * and sufficient within itself to occasion the journey."

Applying the above rules of law to the evidence in the record before us, we are of the opinion that there is no substantial evidence that Chief Willis' death grew out of, or occurred within the course of, his employment as Police Chief of the City of Dumas. The style of this case, as carried in the transcript and briefs, is slightly confusing, but since the identity of the claimant is immaterial to the question presented, we also refer to the decedent as the claimant and the appellant.

The record reveals the following facts: In July, 1968, Jesse K. Willis was Chief of Police of the City of Dumas and was also a deputy sheriff of Desha County. His regular working hours as Chief of Police were from 8 a.m. to 5 p.m., but he was on call at all times. Chief Willis lived in a rented house in Dumas with his wife and his only child, a son Jesse D. Willis, who was serv-

ing in the Armed Forces at the time of Mr. Willis' injuries. Before becoming Chief of Police at Dumas, Chief Willis had served on the Pine Bluff Police Force and he and Mrs. Willis still owned their home in Pine Bluff, and made frequent trips from Dumas to Pine Bluff at the end of his regular workday, and on weekends. Mr. and Mrs. Willis were on their way to Pine Bluff on July 22, 1968, when they were injured in an automobile collision and from which injuries they both died.

As specific background for the claim, the evidence of record is to the effect that on July 10, 1968, one Mose Martin, a resident of Pine Bluff, had been fined on a misdemeanor conviction in the municipal court presided over by the Mayor of Dumas, and had escaped from a prisoner work detail while working out his fine on the streets of Dumas. The Mayor of Dumas told Chief Willis to issue a warrant for the arrest and return of Martin. Chief Willis issued the warrant and placed it in or on his desk, and remarked to some of the other officers that he would bring Martin back to Dumas to work out his fine. After court was adjourned on July 22, 1968, Chief Willis announced that he was going to Pine Bluff. At approximately 6:45 p.m., while driving north on Highway 65, Chief Willis' automobile was involved in a collision with another automobile during a rainstorm and both Chief Willis and his wife, who was riding with him, received the injuries from which they subsequently died.

The Honorable Billie Free, Mayor of Dumas, testified that Chief Willis had advised him that Martin had escaped and that "he thought the boy was in Pine Bluff." He says that he instructed Chief Willis to issue a warrant and bring the defendant back to Dumas, but that he did not specify any time that this should be done. He testified that Chief Willis went to Pine Bluff, not on City of Dumas business, four or five times a week. He testified that although Chief Willis was on call duty 24 hours a day, to his knowledge Chief Willis had never gone out of town to return a prisoner who had escaped. He says that Highway 65 is the only route from Dumas to Pine Bluff.

On cross-examination Mayor Free testified that when city prisoners escape he usually issues a warrant and sends it, by the county sheriff or by a state trooper, to the sheriff of the county to which the prisoner has gone. He testified that Chief Willis' regular work hours were from 8 o'clock in the morning to 5 p.m., but at 5 o'clock he would get into his private automobile and leave. He testified that Chief Willis rented a home in Dumas; that he understood he owned a home in Pine Bluff; that when around 5 o'clock came Chief Willis would "head for Pine Bluff." Mayor Free testified that he ordinarily requested the Desha County sheriff to deliver warrants to other counties, but that on the afternoon of July 22 Chief Willis told him he was going to Pine Bluff and that he asked Chief Willis to issue a warrant and take it up there and give it to the sheriff. He testified that he wanted the warrant given to the sheriff of Jefferson County and the man brought back, but that he did not tell Chief Willis when to issue the warrant or when to take it to Pine Bluff. Mayor Free testified as follows:

> "I sign these warrants, and when I instructed Mr. Willis, I said, 'I want a warrant issued for this man and brought back to the City of Dumas to work out his fine or pay the fine that was due the City of Dumas.' Now, I cannot swear that Mr. Willis fixed that warrant that afternoon, and I'm not going to swear to it."

Mayor Free testified that Chief Willis was not prompt in coming to his office at 8 o'clock unless he was called and that "when the bell rung at 5 o'clock in the afternoon, he got in his car and took off just like that."

> "Q. Did you say that Chief Willis came to Pine Bluff as a matter of practice four or five times, four and five nights a week? I understood you to say that.
>
> A. Well, when I wanted him and couldn't find him at night, I knew where he was, because

he was either in Pine Bluff or Little Rock. It wasn't his desire. It goes back into ' the other side of his family.

Q. But the fact was that he would be in Pine Bluff?

A. Yes, sir.

Q. At night more often than he would be in Dumas?

A. I would back that up a hundred percent.

Q. Would it also be fair to say that, as you put it, when the bell rang at five o'clock he got in his car and got out of there, that he was going to Pine Bluff?

A. I don't say he was going to Pine Bluff, but his automobile would be headed towards Pine Bluff.

Q. He would at least be leaving Dumas?

A. Yes, sir."

Mayor Free testified that the City of Dumas only owned one police car and that it did not leave the City of Dumas. He then testified as follows:

"Q. If you sent an officer out of the City of Dumas to transact some business, he would of necessity have to use his own private car, would he not?

A. Ask the question again, sir.

Q. If you were to send one of your officers outside of the City of Dumas to transact some business, then, that officer would have to use his own personal car?

A. I am not going to send him outside the City limits to perform a duty, but Mr. Willis told me that afternoon he was going to Pine Bluff, and I asked him to take this warrant up there. As I stated in the beginning, Mr. Willis was very lax in the collection of his fines.

Q. You had information Mr. Willis had told you he was going to Pine Bluff that afternoon?

A. That's right.

Q. And you asked him to take this warrant?

A. I told him I wanted this warrant given to the Sheriff or Deputy Sheriff in Jefferson County and have this man brought back."

The Mayor then testified that he usually signed blank warrants and the Chief of Police filled them in. He testified that he saw the warrant and the carbon copy issued for Martin; that he does not remember the date on the warrant, but the warrant was still in Dumas when Chief Willis was injured.

"Q. You say the warrant had never been served?

A. The warrant was still in the desk when Mr. Willis had the wreck.

Q. Was still in the desk?

A. Yes, sir. If it is there now, I cannot answer that because a new Chief took over.

\* \* \*

Q. When did you find it?

A. I found it a week after the accident happened, when they brought Mr. Willis to Dumas. I was going through his personal drawer there. It wasn't locked and the warrant was still right there in the drawer."

Mr. A. L. Morgan succeeded Mr. Willis as Chief of Police and was on the Dumas Police Force at the time of Mr. Willis' collision. He testified that he saw the warrant for the arrest of Martin on Chief Willis' desk sometime between Martin's escape and the date of the collision. He testified that Chief Willis told him that he would take the warrant to Pine Bluff and get one of the officers in Pine Bluff to pick Martin up. Chief Morgan says that he has looked for the warrant but hasn't found it since Mr. Willis' death.

State Trooper Green testified that he investigated the accident in which Mr. Willis was injured; that he talked to Mr. Willis in the hospital at which time Mr. Willis advised that he had started to Pine Bluff but did not say why. He testified that he saw some papers scattered on the floorboard of Mr. Willis' automobile, as well as some on the front and back seats, but that he does not know what they were.

The testimony of other witnesses adds nothing to the testimony above set out. There was testimony to the effect that Chief Willis returned to his office on at least one occasion in the two weeks' interval between the date of his injury and the date of his death, but there is no evidence at all as to what happened to the warrant that had been issued for Martin; and there is no evidence at all that Chief Willis was on his way to Pine Bluff for the purpose of serving the warrant or delivering it to the law enforcement officers in Jefferson County when his injuries occurred.

We conclude, therefore, that there is substantial evidence in the record before us that Chief Willis' injuries which resulted in his death, did not arise out of or occur within the course of his employment as Chief of Police of the City of Dumas.

The judgment is affirmed.